UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL TATER-ALEXANDER, | ) 1:08-cv-00372-OWW-SMS |
| | ) |
| Plaintiff, | ) ORDER GRANTING PLAINTIFF'S |
| | ) APPLICATION TO PROCEED IN FORMA |
| | ) PAUPERIS |
| v. | ) |
| | ) ORDER DISMISSING PLAINTIFF'S |
| CORPORAL LONNIE R. AMERJAN, | ) COMPLAINT WITH LEAVE TO FILE AN |
| et al., | ) AMENDED COMPLAINT NO LATER THAN |
| | ) THIRTY DAYS AFTER THE DATE OF |
| Defendants. | ) SERVICE OF THIS ORDER |
| | ) |
| | ) |

Plaintiff, proceeding pro se, filed on March 14, 2008, a complaint for damages and other relief concerning alleged violations of civil rights. On the same date, he lodged an application to proceed in forma pauperis, which by separate order the Court has directed be filed. The matter has been referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b) and Local Rules 72-302 and 72-304.

I. Application to Proceed in Forma Pauperis

Plaintiff has submitted a declaration that makes the showing required by § 1915(a). Accordingly, the request to proceed in forma pauperis will be granted. 28 U.S.C. § 1915(a).

1

II. <u>Screening the Complaint</u>

In cases wherein the plaintiff is proceeding in forma pauperis, the Court is required to screen cases and shall dismiss the case at any time if the Court determines that the allegation of poverty is untrue, or the action or appeal is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. 1915(e)(2).

Fed. R. Civ. P. 8(a) provides:

> A pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim, or third-party claim, shall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends, unless the court already has jurisdiction and the claim needs no new grounds of jurisdiction to support it, (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks. Relief in the alternative or of several different types may be demanded.

A complaint must contain a short and plain statement as required by Fed. R. Civ. P. 8(a)(2). Although the Federal Rules adopt a flexible pleading policy, a complaint must give fair notice and state the elements of the claim plainly and succinctly. <u>Jones v. Community Redev. Agency</u>, 733 F.2d 646, 649 (9th Cir. 1984). Plaintiff must allege with at least some degree of particularity overt acts which the defendants engaged in that support Plaintiff's claim. <u>Id.</u> Although a complaint need not outline all elements of a claim, it must be possible to infer from the allegations that all elements exist and that there is entitlement to relief under some viable legal theory. <u>Walker v. South Cent. Bell Telephone Co.</u>, 904 F.2d 275, 277 (5th Cir. 1990); <u>Lewis v.</u>

1  ACB Business Service, Inc., 135 F.3d 389, 405-06 (6th Cir. 1998).

2  In reviewing a complaint under this standard, the Court must

3  accept as true the allegations of the complaint in question,

4  Hospital Bldg. Co. v. Trustees of Rex Hospital, 425 U.S. 738, 740

5  (1976), construe the pro se pleadings liberally in the light most

6  favorable to the Plaintiff, Resnick v. Hayes, 213 F.3d 443, 447

7  (9th Cir. 2000), and resolve all doubts in the Plaintiff's favor,

8  Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).

9  If the Court determines that the complaint fails to state a

10  claim, leave to amend should be granted to the extent that the

11  deficiencies of the complaint can be cured by amendment. Lopez v.

12  Smith, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc). A

13  complaint, or a portion thereof, should only be dismissed for

14  failure to state a claim upon which relief may be granted if it

15  appears beyond doubt that the Plaintiff can prove no set of

16  facts, consistent with the allegations, in support of the claim

17  or claims that would entitle him to relief. See Hishon v. King &

18  Spalding, 467 U.S. 69, 73 (1984), citing Conley v. Gibson, 355

19  U.S. 41, 45-46 (1957); see also Palmer v. Roosevelt Lake Log

20  Owners' Ass'n., Inc., 651 F.2d 1289, 1294 (9th Cir. 1981).

21  Dismissal of a pro se complaint for failure to state a claim is

22  proper only where it is obvious that the Plaintiff cannot prevail

23  on the facts that he has alleged and that an opportunity to amend

24  would be futile. Lopez v. Smith, 203 F.3d at 1128.

25  A claim is frivolous if it lacks an arguable basis either in

26  law or fact. Neitzke v. Williams, 490 U.S. 319, 324 (1989). A

27  frivolous claim is based on an inarguable legal conclusion or a

28  fanciful factual allegation. Id. A federal court may dismiss a

claim as frivolous if it is based on an indisputably meritless legal theory or if the factual contentions are clearly baseless. Id.

The test for malice is a subjective one that requires the Court to determine whether the applicant is proceeding in good faith. Kinney v. Plymouth Rock Squab. Co., 236 U.S. 43, 46 (1915); see Wright v. Newsome, 795 F.2d 964, 968 n. 1 (11th Cir. 1986). A lack of good faith is most commonly found in repetitive suits filed by plaintiffs who have used the advantage of cost-free filing to file a multiplicity of suits. A complaint may be inferred to be malicious if it suggests an intent to vex the defendants or abuse the judicial process by relitigating claims decided in prior cases, Crisafi v. Holland, 655 F.2d 1305, 1309 (D.C.Cir. 1981); if it threatens violence or contains disrespectful references to the Court, id.; or if it contains untrue material allegations of fact or false statements made with knowledge and an intent to deceive the Court, Horsey v. Asher, 741 F.2d 209, 212 (8th Cir. 1984).

Here, Plaintiff alleges that he visited the emergency room of Defendant Clovis Community Medical Center, where he refused staff requests to wear a hospital gown because he needed and wanted to remain warm in his sweat clothes due to a physical condition that caused extreme pain when he was cold. Plaintiff alleges that Defendants, who are the hospital, a doctor and nurse practitioner, two Clovis city police officers, and the city of Clovis, deprived him of various civil, statutory, and constitutional rights in declining or delaying treatment, interfering with treatment, and disclosing confidential

information. Plaintiff alleges that he was eventually treated

with medication and draining of a pancreatic cyst after twelve

hours, but the delay resulted in physical and emotional injury,

including permanent organ failure. He seeks damages and

injunctive relief.

A. <u>EMTALA Claim</u>

Plaintiff seeks compensatory and punitive damages from

Defendant Clovis Community Medical Center for a violation of the

Emergency Medical Treatment and Active Labor Act (EMTALA), 42

U.S.C. § 1395dd, et seq. Section 1395dd(a) provides in part:

(a) Medical screening requirement

In the case of a hospital that has a hospital
emergency department, if any individual (whether
or not eligible for benefits under this subchapter)
comes to the emergency department and a request
is made on the individual's behalf for examination
or treatment for a medical condition, the hospital
must provide for an appropriate medical screening
examination within the capability of the hospital's
emergency department, including ancillary services
routinely available to the emergency department,
to determine whether or not an emergency medical
condition (within the meaning of subsection (e)(1)
of this section) exists.

An emergency medical condition is one that is manifested by acute

and severe symptoms, including severe pain, such that the absence

of immediate medical attention could reasonably be expected to

result in placing the health of the individual in serious

jeopardy, serious impairment to bodily functions, or serious

dysfunction of any bodily organ or part. § 1395dd(e)(1). The

screening required is a screening examination that is comparable

to that offered to other patients with similar symptoms, unless

the examination is so cursory that it is not designed to identify

acute and severe symptoms that alert the physician of the need

for immediate medical attention to prevent serious bodily injury.
Jackson v. East Bay Hospital, 246 F.3d 1248, 1256 (9th Cir.
2001). Evidence that a hospital did not follow its own screening
procedures can support a finding of EMTALA liability for
disparate treatment. Baker v. Adventist Health, Inc. , 260 F.3d
987, 995 (9th Cir. 2001).

     Plaintiff alleged that when he sought emergency medical
treatment from Defendant hospital, he received treatment so
cursory that it was not designed to identify acute and severe
symptoms that alert a physician to the need for immediate medical
attention to prevent serious bodily injury; the hospital failed
to provide screening to diagnose an emergency medical condition.
(Complt. at 10-11.) Plaintiff alleged specific facts supporting
this conclusion, namely, that Defendant hospital delayed for ten
or twelve hours in performing blood tests and administering an
IV, which were eventually completed via Plaintiff's left hand,
and in otherwise proceeding to determine his condition, which
involved a pancreatic cyst that caused great pain, extreme
abdominal pressure, and inability to eat or drink. Plaintiff
alleges that his condition was made known to Defendants. The
condition required draining, but the draining was delayed, and
the delay contributed to Plaintiff's ultimately suffering
permanent failure of the pancreas after the delayed draining of
the cyst. (Id. at 11-12, 16.) Plaintiff alleged that on that
occasion and on two other occasions, doctors and nurses of
Defendant hospital had no trouble checking his vitals or
recording pain intensity while Plaintiff was wearing street
clothes. (Id. at 16.)

One inference that may be drawn from the complaint is that the Defendant's own conduct of refusing to wear a hospital gown, as requested by hospital staff, was the reason for Defendant hospital's failure to provide screening. However, Plaintiff specifically alleged that the requirement of wearing a hospital gown was only the personal preference of Defendants, that failure to wear a gown did not in any way hinder or prevent an appropriate screening, and that Defendants intentionally failed to diagnose his condition. (Id. at 11-12.)[1] Plaintiff also alleged in connection with his claim against the Clovis police officers that the officers, in the company of hospital staff, stated to Plaintiff that they knew who he was and that he was "Mr. Jacoby & Meyers," referring to Plaintiff as a well-known law firm. (Cmplt. p. 4.) Further, he alleged in substance that the officers and hospital staff agreed to attempt to effectuate Plaintiff's removal from the hospital because they did not want to treat him. (Id. pp. 4-5.) Although many inferences are possible, construing the complaint liberally in the light most favorable to the pro se Plaintiff, and resolving all doubts in the Plaintiff's favor, the Court concludes that Plaintiff stated a claim of refusal on the part of Defendants to screen as distinct from a voluntary refusal on Plaintiff's part to consent

---

[1] It may be inferred that Plaintiff declined to wear the hospital gown because of a medical condition that qualified Plaintiff to receive Social Security disability and that caused Plaintiff to need to keep his body temperature regulated; it may also be inferred that Plaintiff informed the hospital of the reason why he would not wear a hospital gown and in effect sought them to accommodate his disability. Although the Court will indulge in inferences in favor of a pro se Plaintiff at this stage of screening, Plaintiff is informed that his allegations concerning these matters should be as express as possible; Plaintiff will be given an opportunity to amend his allegations.

1  to treatment.

2      Further, although Plaintiff alleged that Defendant officers

3  commanded Plaintiff to leave, offered to drive Plaintiff to

4  another hospital or to escort him to his car, and insisted on

5  calling a friend to come pick Plaintiff up (Cmplt. at 5), these

6  allegations do not appear to amount to assertions of a transfer

7  within the meaning of § 1395dd(b)(3) (requirement that a hospital

8  that determines that the patient has an emergency medical

9  condition must either provide stabilizing examination and

10  treatment, or certify via a qualified medical person that

11  transfer to another medical facility is appropriate) because it

12  is alleged that the Defendants failed to screen Plaintiff or to

13  undertake any efforts upon which it could have been determined

14  that he had an emergency medical condition. It therefore appears

15  that it had not been determined that Plaintiff had an emergency

16  medical condition, and that therefore no certification or

17  transfer pursuant to the statute was alleged to have been in

18  progress.

19      With respect to a remedy, § 1395dd(d)(2) provides:

20      (2) Civil enforcement
          (A) Personal harm
21      Any individual who suffers personal harm as
        a direct result of a participating hospital's
22      violation of a requirement of this section may,
        in a civil action against the participating hospital,
23      obtain those damages available for personal injury
        under the law of the State in which the hospital
24      is located, and such equitable relief as is
        appropriate.
25
   Section 1395dd(e)(2) provides that the term "participating
26
   hospital" means a hospital that has entered into a provider
27
   agreement under section 1395cc. Plaintiff alleged that Defendant

28

hospital had an emergency department with the capacity to dispense emergency services and other forms of health care, and that it received federal Medicare dollars by contract.[2] (Id. p. 10.)

The Court concludes that Plaintiff sufficiently alleged a claim for a failure to screen for an emergency medical condition by Defendant hospital pursuant to EMTALA.

### B. Discrimination Based on Disability

With respect to screening Plaintiff's claim or claims concerning discrimination because of disability, the precise status of the hospital as a governmental or a private entity is not clearly alleged. Thus, the Court cannot be certain that Plaintiff properly proceeds pursuant to Title II of the ADA as is alleged. Plaintiff is directed to supplement and clarify his allegations in this respect to the extent possible.

### 1. Title II of the ADA

Title II, 42 U.S.C. § 12132, applies to the public sector and states essentially that no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity. To establish a violation of Title II of the ADA, a plaintiff must show that he or she 1) is a qualified individual with a disability, 2) was excluded from participation in or otherwise discriminated against with regard

---

[2] The Court notes that Plaintiff stated that screening was "not" within the capability of Defendant hospital's emergency department (id. ¶ 29), but it appears that his was inconsistent with other allegations and was thus erroneous. Plaintiff may clarify this allegation in an amended complaint.

to a public entity's services, programs, or activities, and 3)
such exclusion or discrimination was by reason of the disability.
Lovell v. Chandler, 303 F.3d 1039, 1052 (9th Cir. 2002).

Plaintiff alleges that he was a qualified individual with a
disability, or disabled, as defined in 42 U.S.C. § 12102(2).
(Cmplt. ¶ 2.) He alleges that he was permanently disabled and
environmentally sensitive, and that cold environmental conditions
caused him great pain, further causing him to maintain and
regulate his body temperature as part of his disability pain
management treatment. (Id. ¶ 30, 33.) Plaintiff's application for
disability entitlement benefits under Title XVI and Title XIX was
granted. (Id. ¶ 34.) He alleges that he was denied the full and
equal enjoyment of the goods, services, facilities, privileges,
advantages, and accommodations of a place of public accommodation
by Defendant hospital without due process and in violation of the
provisions of the ADA because of his environmentally sensitive
disability condition and because Defendant Manfield did not like
Plaintiff's personal characteristics (dislike of Plaintiff,
lifestyle, food Plaintiff ate, and Plaintiff's smoking and
drinking) as well as Plaintiff's failure to wear a hospital gown
based on Plaintiff's physical disability. (Cmplt. ¶¶ 29, 33.)

Under the statute, a disability with respect to an
individual is defined as a physical or mental impairment that
substantially limits one or more of the major life activities of
such individual, a record of such an impairment, or being
regarded as having such an impairment. 42 U.S.C. § 12102(2).
Plaintiff has not alleged any specific facts concerning the
identity of his condition or as to the nature of his condition as

10

1  a mental or physical impairment; he states only that he had a

2  "medical condition" (Cmplt. at ¶¶ 11, 12, 15, 22, 28), "medical

3  illness" (id. ¶ 37), had an "enviornmentally (sic) sensitive

4  disability condition" (id. at ¶ 33), and he refers in passing to

5  his "physical disability" and "medical illness" (id. at ¶ 37).

6      Further, he has failed to allege any specific facts

7  concerning his condition or activities that would warrant an

8  inference that he was impaired in a manner that substantially

9  limited any specific or ascertainable major life activity.

10 However, he has alleged that he was entitled to disability

11 insurance benefits and is receiving Supplemental Security Income

12 benefits; accordingly, it may be inferred that Plaintiff suffers

13 from a physical or mental impairment that substantially limits

14 the major life activity of working in a way that disqualifies

15 Plaintiff from a broad class or range of jobs. Sutton v. United

16 air Lines, Inc., 527 U.S. 471 (1999); 42 U.S.C. § 1382c(a)(3)(A);

17 20 C.F.R. § 416.905 (defining disability under Title XVI as an

18 inability to engage in any substantial gainful activity existing

19 in the national economy due to a medically determinable mental or

20 physical impairment).

21     It is a reasonable inference that Plaintiff was otherwise

22 qualified to participate in or receive the benefit of the

23 hospital's services, programs, or activities; Plaintiff alleged

24 that it was possible for him to receive care without donning a

25 hospital gown because such care had been administered on two

26 prior occasions at the hospital.

27     Plaintiff has not alleged a claim against the hospital

28 because it is not alleged that Defendant hospital was a public

11

entity within the meaning of the statute. In the complaint it is alleged that Defendant hospital was an institution in which sick or injured persons were given medical or surgical treatment, including emergency medicine. (Cmplt. ¶ 6.) Plaintiff alleges that it is "essentially a 'county hospital' by definition" (Cmplt. ¶ 27) in that it receives county, state, and federal Medicare dollars via a contract with the County of Fresno. (Id.)

The ADA defines "public entity" in pertinent part as "any State or local government" or "any department, agency, special purpose district, or other instrumentality of a State or States or local government." 42 U.S.C. § 12131(a)(A)-(B).

It has been held that a private hospital is not an instrumentality of a state or local government as required for liability on an ADA claim, even if the hospital performed services pursuant to a contract with the public entity, if the hospital is not a creature of the state or the local government, such as an agency, department, or special purpose district as specified by § 12131. Green v. City of New York, 465 F.3d 65, 78-79 (2d Cr. 2006); see also, Schiavo ex rel.Schindler v. Schiavo, 403 F.3d 1289, 1293 (11th Cir. 2005).

Further, a "public entity," as defined in Title II, does not include individuals in their individual capacities, and a plaintiff may not pursue an ADA claim against individual defendants named in the complaint. 42 U.S.C. § 12131(1); Vinson v. Thomas, 288 F.3d 1145, 1156 (9th Cir. 2002) (holding that a public official may not be sued in his or her individual capacity under § 1983 for violations of the ADA or § 504 of the Rehabilitation Act because by defining claims as claims against

public entities under those statutes, Congress intended to limit enforcement to claim against public entities, and thus the more generalized recovery mechanism of § 1983 was not available).

Under Title II of the ADA (§ 12132), it is not required that the sole reason for the exclusion, denial of benefits, or discrimination be the disability. Head v. Glacier Northwest, Incorporated, 413 F.3d 1053, 1063-65 (9th Cir. 2005). In Head, the court considered language from Title I ( 42 U.S.C. § 12112(a), "because of"), Title II (42 U.S.C. § 12132, "by reason of"), and Title IV (42 U.S.C. § 12203(a), "because of"). The court noted the contrast presented between the quoted language of the ADA and the language of the Rehabilitation Act ("solely"), and it concluded that the appropriate causal standard under the ADA is that the disability must be a motivating factor. Head, 413 F.3d at 1063-65. Thus, the fact that Plaintiff alleges that he was denied treatment for the additional reasons that he and his lifestyle were not liked is not fatal to a claim under the ADA.

Finally, it has been held that neither an ADA nor a RA claim is stated where the gist of the claim concerns medical treatment decisions involving alleged substandard treatment or medical malpractice. See, Burger v.Bloomberg, 418 F.2d 882, 883 (8th Cir. 2005); Schiavo ex rel. Schindler v. Schiavo, 403 F.3d 1289, 1294 (11th Cir. 2005); Fitzgerald v. Corr. Corp. of America, 403 F.3d 1134, 1144 (10th Cir. 2005); Bryant v. Madigan, 84 F.3d 246, 249 (7th Cir. 1996). At this pleading stage of the proceedings, it appears that Plaintiff is not simply challenging carelessness or the precise decisions made concerning the treatment to be selected by persons who treated him, but rather is addressing the

deliberate and total failure to treat him because of his medical condition. However, to the extent that Plaintiff alleges negligent treatment, Plaintiff fails to state an ADA or RA claim.

## 2. Title III of the ADA

With respect to Title III of the ADA, 42 U.S.C. § 12182 (a) provides that no individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to) or operates a place of public accommodation. Section 12181(7)(F) expressly provides that specified private entities, including hospitals, are considered public accommodations for purposes of the subchapter if the operations of the entity affect commerce.

Discrimination by denying participation, affording an unequal benefit, or providing a separate but unequally effective benefit are all prohibited by the statute. Section 12182(b)(1)(A)(i) specifies that it shall be discriminatory to subject an individual or class of individuals on the basis of a disability directly or through other arrangements to a denial of the opportunity of the individual to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity. Section 12182(b)(1)(A)(ii) identifies as discriminatory affording an individual or class of individuals on the basis of a disability with the opportunity to participate in or benefit from a good, service, facility, privilege, or advantage or accommodation that is not equal to that afforded to other individuals. Section 12182(b)(I)(A)(iii)

provides that it shall be discriminatory to provide an individual a good, service, facility, privilege, or advantage or accommodation that is different or separate from that provided to other individuals unless such action is necessary to provide the individual or class of individuals with a good, service, facility, privilege, advantage, or accommodation, or other opportunity that is as effective as that provided to others. Further, § 12182(b)(1)(D) provides that an individual or entity shall not utilize standards or criteria or methods of administration that may have the effect of discriminating on the basis of disability. Section 12182(b)(2)(A)(ii) specifies that discrimination includes the failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations.

Indulging all inferences in favor of Plaintiff, it may be concluded that Plaintiff has alleged a denial of service on the basis of his disability. However, Plaintiff may desire to specify the form of discrimination suffered. In any event, Plaintiff has not alleged any facts demonstrating that the operations of Defendant hospital affected commerce. Thus, Plaintiff has not stated a claim against Defendant hospital.

Further, no claim is stated against the Defendant doctor or nurse because the governing law indicates that individuals may be liable under the ADA if they own, lease, lease to, or operate a

place of public accommodation. 42 U.S.C. § 12182(a); <u>Aikins v.St.</u>
<u>Helena Hospital</u>, 843 F.Supp. 1329 (N.D.Cal. 1994). There is no
allegation that the individuals named as defendants had any
control with respect to the place providing the services. It is
alleged that Defendants Dr. Thomas E. Mansfield, who was sued in
his individual and "official" capacities, was a licensed medical
doctor who practiced as an emergency room physician via an
independent contractor agreement with Defendant Hospital. (Cmplt.
¶ 7.) It was alleged that Defendant nurse Marilyn Jo Greene, who
was sued in her individual and "official" capacities, was a
registered nurse practitioner and furnisher employed by Defendant
hospital, and she provided general nursing duties and care and
was responsible for carrying out the instructions of independent
contractor physicians. Plaintiff did not allege any facts
warranting an inference that the two practitioners were on the
hospital's board of directors or had any authority to enact or
amend hospital policy. <u>See</u>, <u>Aikins v. St. Helena Hospital</u>, 843 F.
Supp. 1329, 1335 (N.D.Cal. 1994).

Accordingly, Dr. Mansfield and nurse Greene are not proper
Defendants under § 12182(a).

### 3. <u>Retaliation Claim under Title IV</u>

Title 42 U.S.C. § 12203(a) provides that no person shall
discriminate against any individual because such individual has
opposed any act or practice made unlawful by the chapter or
because such individual made a charge, testified, assisted, or
participated in any manner in an investigation, proceeding, or
hearing under the chapter. Section 12203(b) provides that it
shall be unlawful to coerce, intimidate, threaten, or interfere

with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed any right granted or protected by the chapter, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of any right granted or protected by the chapter. Section 12203(c) states that the remedies and procedures available under sections 12117, 12133, and 121887 of the title shall be available to aggrieved persons for violations of subsections (a) and (b) of the section with respect to subchapter I, subchapter II, and subchapter II of the chapter, respectively.

In order to state a claim for retaliation in violation of the ADA, a plaintiff must show 1) plaintiff's involvement in a protected activity, 2) defendant's subjecting plaintiff to an adverse action, and 3) a causal link between the protected activity and the defendant's action. Munir v. Thomas, 2008 WL 64110, *6 (E.D.Cal. March 5, 2008) (citing Brown v. City of Tucson, 336 F.3d 1181, 1186-87 (9th Cir. 2003) (outlining the elements of a prima facie case of ADA retaliation under a burden-shifting analysis)). Pursuing one's rights under the ADA constitutes protected activity. Pardi v. Kaiser Foundation Hospitals, 389 F.3d 840, 850 (9th Cir. 2004). In the context of employment cases, an adverse action is any action reasonably likely to deter employees from engaging in protected activity. Pardi v. Kaiser Foundation Hospitals, 389 F.3d at 850. Requesting a reasonable accommodation is protected activity. See, Head v. Glacier Northwest Inc., 413 F.3d 1053, 1066 (9th Cir. 2005). It has been held that complaining in good faith of disparate treatment, failure to accommodate a plaintiff's medical

17

condition, or of retaliatory conduct that could constitute discrimination under the ADA is protected activity because the statute prohibits discrimination due to an individual's opposition to any conduct or practice made unlawful, or due to one's having made a charge. Angelone v. Seyfarth Shaw, LLP, 2007 WL 1033458, *12 (E.D.Cal. April 3, 2007).

It is unclear whether a claim for retaliation under 42 U.S.C. § 12203 may be brought against an individual in an individual capacity. In Ostrach v. Regents of University of California, 957 F. Supp. 196, 200 (E.D.Cal. 1997), it was held that individual defendants can be liable for retaliation, as distinct from non-retaliatory discrimination, under § 12203 of the ADA, which expressly states that no "person" shall discriminate; further, not only injunctive relief, but also general and punitive damages were held to be available for a wilful violation of the anti-retaliation provisions. However, it has been held to the contrary. See, e.g., Stern v. California State Archives, 982 F.Supp. 690, 693 (E.D.Cal. 1997), which emphasizes that only the remedies provided under Title VII are available for retaliation claims. In another circuit, it has been held that a plaintiff asserting rights to public accommodation can bring suit against individual defendants. Shotz v. City of Plantation, Fla., 344 F.3d 1161, 1164-80 (11th Cir. 2003). In the absence of a binding opinion from the Ninth Circuit Court of Appeals, it will be assumed that such a claim exists. Cf., Munir v. Thomas, 2008 WL 641110, *9 (E.D.Cal. March 5, 2008).

It is unclear whether Plaintiff is attempting to state such a claim. Plaintiff alleged that he told the police officers that

Defendant hospital, doctor, and nurse were denying him emergency medical services and were punishing Plaintiff for exercising the enjoyment of his legal rights, (Cmplt. ¶ 14); care such as an IV, blood tests, and pain medication were eventually given but were withheld as punishment for ten hours because Plaintiff would not bow to the preference of Defendant hospital, doctor, and nurse concerning wearing a gown, (id. at ¶ 30); and Defendants doctor, nurse, and officers knew that Plaintiff had a severely painful medical condition and purposefully intimidated and coerced him in an attempt to cause him to leave the hospital in order to avoid recordation of the intentional denial of treatment, (id. at ¶ 36). It appears that Plaintiff may be attempting to state a claim that he exercised his rights under the ADA by requesting from Defendants an accommodation in the form of not having to wear a hospital gown, and he complained about the lack of care that was based in turn on his disability, and in retaliation, Defendants took adverse action, such as denial of pain medication and other treatment, etc.

It does not appear that Plaintiff has stated such a claim, but Plaintiff will have an opportunity to amend the complaint to attempt to state such a claim.

### 4. Rehabilitation Act

The Rehabilitation Act, 29 U.S.C. § 794, applies to entities that receive federal financial assistance. Section 794(a) provides that no otherwise qualified individual with a disability in the United States, as defined by section 705(20) of the title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be

19

1  subjected to discrimination under, any program or activity

2  receiving federal financial assistance.

3      To establish a violation of the Rehabilitation Act, 29

4  U.S.C. § 794 (section 504 of the Rehabilitation Act), a plaintiff

5  must show that he or she 1) is handicapped within the meaning of

6  the Rehabilitation Act, 2) is otherwise qualified for the benefit

7  or services sought, 3) was denied the benefit or services solely

8  by reason of her handicap, and 4) the program providing the

9  benefit or services receives federal financial assistance.

10  Lovell v. Chandler, 303 F.3d 1039, 1052 (9th Cir. 2002).

11      The same standards with respect to rights, remedies, and

12  procedures apply to Rehabilitation Act claims as are applied

13  under § 12132 (Title II) of the ADA. 42 U.S.C. § 12133. Thus, the

14  same remedies are available for violations of Title II of the ADA

15  and § 504 of the Rehabilitation Act. 42 U.S.C. § 12133. The

16  remedies, in turn, are the same as those set forth in Title VI of

17  the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq. 29 U.S.C.

18  § 794a(a)(2); Lovell v. Chandler, 303 F.3d at 1055. Pursuant to

19  case law under Title VI, compensatory damages are not available

20  under Title II or § 504 absent a showing of discriminatory intent

21  that constitutes deliberate indifference, which requires both

22  knowledge that a harm to a federally protected right is

23  substantially likely, and a failure to act upon that likelihood.

24  Lovell v. Chandler, 303 F.3d at 1055.

25      Here, Plaintiff has alleged that the Defendant hospital

26  received federal financial assistance in the form of federal

27  Medicare dollars. (Cmplt. ¶ 27.)

28      However, Plaintiff has not alleged facts warranting an

inference of the discriminatory intent required. Further, the same defects or limitations noted above with respect to Plaintiff's claim under Title II apply to his claim under the Rehabilitation Act. Plaintiff cannot state a claim under the Rehabilitation Act with respect to the individual Defendants.

However, the Court additionally notes that under the Rehabilitation Act, Plaintiff must allege that the discrimination was due <u>solely</u> to his disability. <u>Lovell v. Chandler</u>, 303 F.3d 1039, 1052 (9th Cir. 2002); <u>compare</u>, <u>Head v. Glacier Northwest, Incorporated</u>, 413 F.3d 1053, 1063-65 (9th Cir. 2005). Here, Plaintiff has alleged that he was denied service in part because Defendant doctor did not like his personal characteristics or behavior. (Cmplt. at ¶¶ 32, 33.) Thus, in this respect, Plaintiff has failed to state a claim under the Rehabilitation Act against Defendant hospital.

C. <u>Claims pursuant to 42 U.S.C. § 1983</u>

The Civil Rights Act provides:

> Every person who, under color of [state law]... subjects, or causes to be subjected, any citizen of the United States... to the deprivation of any rights, privileges, or immunities secured by the Constitution... shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. To state a claim pursuant to § 1983, a plaintiff must plead that defendants acted under color of state law at the time the act complained of was committed and that the defendants deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. <u>Gibson v. United States</u>, 781 F.2d 1334, 1338 (9th Cir. 1986). The statute plainly requires that there be an actual

connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See Monell v. Department of Social Services, 436 U.S. 658, (1978); Rizzo v. Goode, 423 U.S. 362 (1976). The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

### 1. Color of Law and Conspiracy

Further, to state a claim under section 1983, a plaintiff must plead (1) that the defendant acted under color of state law and (2) that the defendant deprived him of rights secured by the Constitution or federal statutes. Gibson v. United States, 781 F.2d 1334, 1338 (9th Cir. 1986). Generally, private parties are not acting under color of state law. See Price v. Hawaii, 939 F.2d 702, 707-08 (9th Cir. 1991).

However, "[a]ction taken by private individuals may be 'under color of state law' where there is 'significant' state involvement in the action." Howerton v. Gabica, 708 F.2d 380, 382 (9th Cir. 1983).

A conspiracy between a private party and a state official to deprive others of constitutional rights may result in action by a private party under color of state law. A conspiracy claim brought under section 1983 requires proof of "'an agreement or meeting of the minds to violate constitutional rights,'" Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2001) (quoting United Steel

Workers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1540-41 (9th Cir. 1989) (citation omitted)), and an actual deprivation of constitutional rights, Hart v. Parks, 450 F.3d 1059, 1071 (9th Cir. 2006) (quoting Woodrum v. Woodward County, Oklahoma, 866 F.2d 1121, 1126 (9th Cir. 1989)). "'To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant' must at least share the common objective of the conspiracy.'" Franklin, 312 F.3d at 441 (quoting United Steel Workers, 865 F.2d at 1541).

Here, Defendants doctor, nurse, and hospital are private actors and thus cannot be said to have been acting individually or in combination with each other under color of law.

However, Plaintiff alleges that Clovis Police officers Tina Stirling and Lonnie R. Amerjan contacted Plaintiff at 10:25 p.m. about Plaintiff's declining to wear a hospital gown and trying to resolve an issue concerning Plaintiff's being an uncooperative patient; after conferring with Defendant nurse Greene, the officers directed Plaintiff to leave the hospital, employed schemes, intimidation and coercion tactics verbally and with physical gestures in an attempt to impede Plaintiff's goal of reasonable medical treatment and services; and with Defendants doctor, nurse, and hospital, the officers intentionally and with deliberate indifference and reckless disregard for Plaintiff's rights, interfered with and delayed Plaintiff's right to obtain reasonable medical emergency treatment, and denied Plaintiff his liberty interest in receiving medical assistance and services (Cmplt. ¶¶ 11, 14, 16, 25, 34.) The hospital's calling in the police, the individuals' sharing of allegedly confidential

medical information, their conversing together and forming a plan to get Plaintiff to leave the hospital without care, engaging in specified conduct to get Plaintiff to leave, and denying care and treatment was done pursuant to a plan by all Defendants to harm Plaintiff on the basis of his physical disability. (Id. ¶¶ 35-38.) Further, by not stopping the other Defendants' abuse and neglect of Plaintiff, the officers enabled the other defendants to continue to deny Plaintiff his rights. (Id. ¶ 38.)

Drawing all inferences in favor of Plaintiff, it appears that Plaintiff has alleged some of the elements a conspiracy, such that it could be concluded that in their actions, the private individual Defendants acted under color of law. However, as the following discussion shows, Plaintiff has failed to identify a right subject to being redressed under § 1983.

Accordingly, Plaintiff has not stated a claim for conspiracy and has not alleged specific facts to warrant the private Defendants as proceeding under color of law.

2. Liability of Hospital and City of Clovis

a. The Hospital

Plaintiff has not stated a claim under § 1983 with respect to the Defendant hospital. The governing principle of liability is that in order for a person acting under color of state law to be liable under § 1983, the person must be shown to have personally participated in the alleged deprivation of rights; there is no respondeat superior liability. Bell v. Clackamas County, 341 F.3d 858, 867 (9th Cir. 2003); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

Assuming without deciding that the Defendant hospital was

acting as a private actor, the law concerning the liability of corporate entities has not been definitively stated. See, Traver v.Meshriy, 627 F.2d 934, 939 (9th Cir. 1980). However, courts which have considered the question have concluded that the principles of liability articulated in Monell v. Department of Social Services, 436 U.S. 658 (1978), apply to private corporations acting under color of law; thus, a private corporation is not vicariously liable under a theory of respondeat superior for the constitutional torts of its employees, but is liable only when an official policy or custom of the corporation causes the deprivation of constitutional rights. Robinson v. City of San Bernardino Police Dept., 992 F.Supp. 1198, 1204 (C.D.Cal. 1998); See, Nash v. Lewis, 2007 WL 2027283, *1 (D.Or. July 6, 2007) (citing Iskander v. Village of Forest Park, 690 F.2d 126, 128-29 (7th Cir.1982); Sanders v. Sears, Roebuck & Co., 984 F.2d 972, 975-76 (8th Cir.1993); Powell v. Shopco Laurel Co., 678 F.2d 504, 506 (4th Cir.1982); Dubbs v. Head Start, Inc., 336 F.3d 1194, 1216 (10th Cir.2003); and Austin v. Paramount Parks, Inc., 195 F.3d 715, 727-28 (4th Cir.1999)).

Under Monell, a local government unit may not be held responsible for the acts of its employees under a respondeat superior theory of liability. Monell v. Department of Social Services, 436 U.S. 658, 691 (1978); Webb v. Sloan, 330 F.3d 1158, 1163-64 (9th Cir. 2003); Gibson v. County of Washoe, 290 F.3d 1175, 1185 (9th Cir. 2002). A local government unit may only be held liable if it inflicts the injury of which the plaintiff complains. Gibson, 290 F.3d at 1185.

Generally, a claim against a local government unit for

municipal or county liability requires an allegation that "a
deliberate policy, custom, or practice... was the 'moving force'
behind the constitutional violation... suffered." <u>Galen v. County
of Los Angeles</u>, 477 F.3d 652, 667 (9th Cir. 2007); <u>City of
Canton, Ohio, v. Harris</u>, 489 U.S. 378, 385 (1989).

     Alternatively, and more difficult to prove, municipal
liability may be imposed where the local government unit's
omission led to the constitutional violation by its employee.
<u>Gibson</u> at 1186. Under this route to municipal liability, the
"plaintiff must show that the municipality's deliberate
indifference led to its omission and that the omission caused the
employee to commit the constitutional violation." <u>Id.</u> Deliberate
indifference requires a showing "that the municipality was on
actual or constructive notice that its omissions would likely
result in a constitutional violation." <u>Id.</u>

     Here, the complaint contained conclusional allegations of
the hospital's participation or knowledge with respect to the
events in question (e.g., that the hospital summoned the police,
failed to diagnose, failed to afford Plaintiff with reasonable
procedural safeguards, was informed of Plaintiff's disability,
etc.). Plaintiff states that the hospital was grossly negligent
in its oversight responsibilities of the individuals with whom
they had contractor agreements (Cmplt. § 33), and asserts:

     A sufficient causal connection exists between
     defendant Hospital, Mansfield and Green that in
     their supervisory, training, and teaching role on behalf
     on (sic) defendant Hospital amounts to proliferating
     unlawful conduct and the constitutional violations
     associated therewith making them liable under § 1983
     because they were personally involved in the constitutional
     deprivations.

(Cmplt. ¶ 33.) These are not allegations of fact. While detailed
allegations are not required, a plaintiff must set forth "the
grounds of his entitlement to relief[,]" which "requires more
than labels and conclusions, and a formulaic recitation of the
elements of a cause of action...." <u>Bell Atlantic Corp. v.
Twombly</u>, 127 S.Ct. 1955, 1964-65 (2007) (internal quotations and
citations omitted).

Accordingly, it is concluded that Plaintiff has not stated a
claim under § 1983 against the hospital with respect to medical
treatment.

### b. <u>City of Clovis</u>

Plaintiff alleged that he was treated differently by
Defendant Officer Stirling because of a lack of training (Cmplt.
¶ 18); Officer Amerjan trained Officer Stirling (<u>id.</u> ¶ 20).
Corporal Amerjan was a veteran police officer with many years of
field experience and extensive legal training. (<u>Id.</u> ¶¶ 19, 20.)
The training was part of the custom, policy, and practice of the
city of Clovis, and because of a failure adequately to train
Officer Stirling, multiple violations of Plaintiff's
constitutional rights proximately resulted (¶¶ 20, 26); Defendant
Amerjan's training or failure to train adequately amounted to and
reflected deliberate indifference towards Plaintiff's seeking
emergency medical treatment and public services, and represented
official policy and custom of the city because Defendant Corporal
Amerjan trained Defendant Stirling to use the same acts in the
future, and the city chose that method over other methods of
training. He further alleged:

...a sufficient causal connection exists between his

> supervisory, training, and teaching role on behalf
> on (sic) defendant city in proliferating unlawful
> conduct and the constitutional rights violations
> associated therewith.

(Cmplt. ¶ 26.)

The Court concludes that Plaintiff has adequately pled the liability of Defendant City, as distinct from any other participants in the events in question, based on custom or failure to train. Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 165-68 (1993) (allegation of failure to train and custom or policy, involving only a single instance of misconduct, was held sufficient).

However, as the discussion which follows will show, Plaintiff has not alleged facts showing that a right subject to being redressed under § 1983 was violated, and thus he has not stated a claim pursuant to § 1983.

3. Right that May Be Redressed under § 1983

With respect to all Defendants, the precise right or rights concerning which Plaintiff seeks redress is unclear. The Court will not attempt to discern claims where none are intended. See, O'Guinn v. Lovelock Correctional Center, 502 F.3d 1056 (9th Cir. 2007). However, it appears that Plaintiff relies on rights relating to his Social Security disability and to constitutional privacy. The Court must determine whether or not the right or rights Plaintiff alleges were violated were federally protected rights giving rise to a private action on the part of Plaintiff pursuant to 42 U.S.C. § 1983.

a. Medical Treatment

It is established that the remedy afforded by § 1983 can be

28

used to bring actions against state actors for violations of federal statutory as well as constitutional law. Maine v. Thiboutot, 448 U.S. 1, 4 (1980).

Plaintiff alleged that his application for disability benefits under Title XVI and for medical entitlement benefits under Title XIX of the Social Security law was granted; thereafter, Defendants denied him his benefits, and his liberty interest therein, without due process of law by denying him medical assistance. (Cmplt. at ¶¶ 34, 35.)

Plaintiff appears to rely on a right to procedural due process. The Fourteenth Amendment protects persons against the deprivation of liberty or property by the government without due process. Portman v.County of Santa Clara, 995 F.2d 898, 904 (9th Cir. 1993). A claim pursuant to § 1983 based on the deprivation of procedural due process has three elements: 1) a liberty or property interest, 2) a deprivation of the interest by the government, and 3) lack of process. Id.

Plaintiff cites to his right to disability insurance benefits under Title XVI, and he cites to 42 U.S.C. § 1381a (providing that every disabled person who is determined to be eligible on the basis of his income and resources shall be paid benefits by the Commissioner of Social Security), but Plaintiff has alleged no facts indicating that Plaintiff's receipt of monetary benefits has been inhibited or denied.

Plaintiff also cites to Title XIX, which is understood as a reference to subchapter XIX, 42 U.S.C. §§ 1396 through 1396v. These multiple, complex statutes concern grants to states for medical assistance programs.

1   With respect to federal statutes enacted pursuant to

2   Congress's spending clause powers, a § 1983 remedy applies only

3   when Congress manifests an unambiguous intent to confer

4   individual rights. <u>Gonzaga University v. Doe</u>, 536 U.S. 273, 280

5   (2002). Further, when the remedial devices provided in a

6   particular Act are sufficiently comprehensive, they may suffice

7   to demonstrate congressional intent to preclude the remedy of

8   suits under § 1983. <u>Middlesex County Sewerage Authority v.</u>

9   <u>National Sea Clammers Ass'n</u>, 453 U.S. 1, 20 (1981).

10  The test to be applied to determine whether a particular

11  statutory provision gives rise to a federal right that may be

12  redressed under § 1983 requires the Court to consider whether or

13  not 1) Congress intended that the provision in question benefit

14  the plaintiff, 2) the plaintiff has demonstrated that the right

15  assertedly protected by the statute is not so vague and amorphous

16  that its enforcement would strain judicial competence, and 3) the

17  statute unambiguously imposes a binding obligation on the states

18  such that the provision giving rise to the asserted right is

19  couched in mandatory, rather than precatory terms. <u>Blessing v.</u>

20  <u>Freestone</u>, 520 U.S. 329, 340-41 (1997); <u>Ball v. Rodgers</u>, 492 F.3d

21  1094, 1104-1105 (9th Cir. 2007).

22  Plaintiff has failed to identify sufficiently the right he

23  alleges was denied in order to permit the Court to undertake

24  analysis of whether or not a claim for denial of the right may be

25  redressed under § 1983. Generally a plaintiff is not required to

26  expressly identify the constitutional or statutory basis for his

27  claim, but rather must only state the facts underlying the claim.

28  <u>McCalden v. California Library Association</u>, 955 F.2d 1214, 1224

30

(9th Cir. 1990). However, in this instance, Plaintiff's statement
of facts is inadequate to permit screening of the complaint. See,
McColm v. Abner, 2006 WL 3645308, *8 (N.D.Cal. December 12,
2006).

    With respect to Plaintiff's claim concerning rights
conferred under statutes relating to Social Security, Plaintiff
will be given an opportunity to amend his complaint to specify
further facts, including but not limited to the precise statutory
section or sections that provide the basis of the particular
right Plaintiff seeks to redress under § 1983, in order to
provide appropriate notice and to permit screening of the
complaint.

b. Constitutional Privacy

    Plaintiff alleges that he informed the Defendant police
officers, who inquired "specifically into plaintiff's personal
confidential medical business and declining to wear a hospital
gown," (Cmplt. ¶ 11), that he had a medical condition that was
confidential; Defendant officers continued to try to obtain
information and/or to obtain a waiver of confidentiality, (id. ¶¶
11-14); Defendant officers conversed with Defendant nurse Greene;
Defendant officers returned and stated that the hospital wanted
to perform specific tests and other related specific procedures
relating to Plaintiff's specific illness that an ordinary person
would not know, (id. ¶ 15); and Defendant officers thus had "in
some manner or fashion" obtained Plaintiff's personal, private,
and confidential medical information, (id.). Thereafter the
officers returned, attempted to effectuate Plaintiff's departure
from the hospital, acknowledged that the matter was a civil

matter between Plaintiff and the hospital, and left and did not

return. (Id. ¶¶ 15-18.)

Plaintiff alleges that the officers conducted a warrantless

search and seizure and obtained confidential information

protected by the Fourth, Fifth, and Fourteenth Amendments in

violation of Plaintiff's right to privacy; Plaintiff believes

that "the possibility exists" that he was either being

investigated, detained, or in custody unlawfully and thus had a

constitutional right to assert his protection equivalent to his

right against self-incrimination. (Id. ¶¶ 21-22.) Plaintiff does

not state specifically what the information was, but it is fairly

inferred that Plaintiff refers to medical records, test results,

diagnosis, and prognosis. (Id. ¶ 22.)

It is established that there is a constitutionally protected

interest in avoiding disclosure of personal matters, including

medical information. Nelson v. National Aeronautics and Space

Administration, 512 F.3d 1134, 1144 (9th Cir. 2008) (quoting

Norman-Bloodsaw v. Lawrence Berkeley Laboratory, 135 F.3d 1260,

1269 (9th Cir. 1998)). In Yin v. State of California, 95 F.3d 864,

871 n. 12 (9th Cir. 1996), the court recognized a privacy

interest in medical information, including diagnosis and medical

records, that was protected under the Fourth Amendment and the

Due Process Clause of the Fifth or Fourteenth Amendments. The

right to informational privacy is not absolute, but is

conditional and may be infringed upon a showing of a proper

governmental interest. In re Crawford, 194 F.3d 954, 959 (9th

Cir. 1999). Relevant factors to be considered are case-specific,

but generally include the type of record requested, the

32

information contained therein, the potential for harm in any subsequent nonconsensual disclosure, the injury from disclosure to the relationship in which the record was generated, the adequacy of safeguards to prevent unauthorized disclosure, the degree of need for access, and whether there is an express statutory mandate, articulated public policy, or other recognizable public interest militating toward access. Id. In each case in which governmental action compels disclosure of private information, the government has the burden of showing that is use of the information would advance a legitimate state interest and that its actions are narrowly tailored to meet the legitimate interest. Id.

Here, the information was not disclosed to the officers in response to questioning of Plaintiff by the government; rather, the information was disclosed by a third party to the officers. There is no basis for an inference that the third party, Nurse Greene, was compelled to divulge the information by the government. It is alleged that the nurse divulged, and the officers obtained, the information as part of a conspiracy with the purpose of harming Plaintiff because of his disability.

With respect to the Fourth Amendment, governmental action to uncover information is considered a search if the target thereof has a reasonable expectation of privacy in the information being sought. Nelson, 512 F.3d at 1146. Nevertheless, there is no search if the government obtains from a third party information revealed to the third party. Id. Further, the Fourth Amendment is generally not applied to direct questioning; instead, if acquiring testimonial, as distinct from physical, evidence is the

33

objective, then the Fifth Amendment is the relevant
constitutional amendment. <u>Nelson</u>, 512 F.3d at 1146 (citing
<u>Greenawalt v. Indiana Dept. of Corrections</u>, 397 F.3d 587, 591
(7th Cir. 2005), which in turn characterized questioning of a
person already in custody as in the realm of the Fifth Amendment.
The Fifth Amendment refers to questioning of a person in a
criminal case, and the cited portion of <u>Greenawalt</u> specifically
referred to questioning of a person who was detained, and
compelled applicatin of a lie detector test. <u>Id.</u>

     With respect to any Fifth Amendment claim, Plaintiff alleges
only that it was possible that he was being detained or
investigated, but the clear allegations of the complaint were
that Plaintiff desired to stay at the hospital, and that he
declined to give the private information to the government
officers.

     One aspect of a privacy right under the Fourteenth Amendment
relates to intrusion into a zone of privacy or the interest in
independence in making certain kinds of important decisions. <u>In
re Crawford</u>, 194 F.3d 954, 957 (9th Cir. 1999). Plaintiff has not
alleged facts warranting an inference that any of his decision
making was interfered with or obstructed by Defendants. Plaintiff
will have an opportunity to file an amended complaint in which he
alleges specific facts that would support a claim.

     It is therefore concluded that Plaintiff has not stated a
claim regarding a Fourth, Fifth, or Fourteenth Amendment
violation of privacy based on the disclosure of information to
the Defendant officers or the interference of any Defendant with
Plaintiff's zone of privacy.

1   In conclusion, although Plaintiff has not stated a right

2   subject to being redressed under § 1983, and thus has not stated

3   a claim under § 1983, Plaintiff will have an opportunity to file

4   an amended complaint.

5   D. <u>Section 1985</u>

6   Plaintiff refers to 42 U.S.C. § 1985. (Cmplt. p. 1.)

7   Title 42 U.S.C. § 1985 covers the conspiratorial prevention

8   of an officer from performing his duties. § 1985(1). This does

9   not appear to be the basis of Plaintiff's claim.

10   Section 1985 also covers conspiratorial deterrence of

11   witnesses by force, intimidation, or threat, and the obstruction

12   of justice with intent to deny any citizen the equal protection

13   of the laws. § 1985(2). Section 1985(3) provides for a claim for

14   damages for a conspiracy to deprive another of equal protection

15   of the laws.

16   A claim under § 1985(2) requires either a conspiracy among

17   two or more persons to injure a party or witness in his person or

18   property because of attending federal court or testifying in any

19   manner pending in federal court, and injury or damages to the

20   claimant; or, with respect to state justice, a conspiracy with

21   respect to obstruct justice in a state with the intent to deny to

22   any citizen the equal protection of the laws. <u>Portman v. County</u>

23   <u>of Santa Clara</u>, 995 F.2d 898, 909 (9th Cir. 1993). Further, with

24   respect to protection against obstruction of state justice, it is

25   established that the "equal protection" language requires an

26   allegation of animus that is based on membership in a protected

27   class. <u>Id.</u>

28   A required element for a violation of § 1985(3) is a

35

1  conspiracy. <u>Addisu v. Fred Meyer</u>, Inc., 198 F.3d 1130, 1140 (9th

2  Cir.2000) The United States Supreme Court has held that in a §

3  1985(3) action, a claimant must show "some racial, or perhaps

4  otherwise class-based, invidiously discriminatory animus behind

5  the conspirators' action. The conspiracy, in other words, must

6  aim at a deprivation of the equal enjoyment of rights secured by

7  the law to all." <u>Griffin v. Breckenridge</u>, 403 U.S. 88, 102, 91

8  S.Ct. 1790, 29 L.Ed.2d 338 (1971). Accordingly, the Ninth Circuit

9  has held that " § 1985(3) extends 'beyond race only when the

10  class in question can show that there has been a governmental

11  determination that its members require and warrant special

12  federal assistance in protecting their civil rights.'" <u>Orin v.</u>

13  <u>Barclay</u>, 272 F.3d 1207, 1217 n. 4 (9th Cir.2001).

14      Plaintiff's complaint, construed liberally, does not allege

15  facts showing a conspiracy or any class-based or invidiously

16  discriminatory animus. The Court concludes that Plaintiff fails

17  to state a claim under § 1985.

18              E.  <u>Miscellaneous Federal Claims</u>

19      Plaintiff's complaint refers to 42 U.S.C. §§ 2000a-2, 2000a-

20  3, and 2000a-6. (Cmplt. p. 1.) Those sections in turn refer to

21  interference with rights secured by §§ 2000a or 2000a-1, which

22  refer to discrimination of various types on the ground of race,

23  color, religion, or national origin. Plaintiff has alleged no

24  facts concerning discrimination on the basis of race, color,

25  religion, or national origin. Accordingly, Plaintiff has not

26  stated a claim pertinent to these sections.

27              F.  <u>State Law Tort Claims</u>

28      With respect to any possible state law claims against the

36

1   officers (Cmplt. at pages 8-9, 19-20), Plaintiff has failed to

2   allege compliance with the California Tort Claims Act, which

3   requires that a tort claim against a public entity or its

4   employees be presented to the California Victim Compensation and

5   Government Claims Board, formerly known as the State Board of

6   Control, no more than six months after the cause of action

7   accrues. Cal. Govt. Code §§ 905.2, 910, 911.2, 945.4, 950-950.2

8   (West 2008). Presentation of a written claim and action on, or

9   rejection of, the claim are conditions precedent to suit;

10  compliance with the claims presentation requirement is an element

11  of the cause of action, or claim, and failure to allege facts

12  demonstrating or excusing compliance with the requirement

13  subjects a claim against a public entity to a demurrer for

14  failure to state a claim. State v. Superior Court of Kings County

15  (Bodde), 32 Cal.4th 1234, 1239, 1243 (2004); Mangold v.

16  California Pub. Utils. Comm'n., 67 F.3d 1470, 1477 (9th Cir.

17  1995). This means that a plaintiff must allege that he has

18  presented a timely claim to the State Board of Control. City of

19  San Jose v. Superior Court, 12 Cal.3d 447, 454 (1974). Because no

20  such allegations are present in the complaint before the Court,

21  any such claims would be subject to dismissal.

22      With respect to Plaintiff's allegations regarding emotional

23  distress, Plaintiff entitles his claim as one for intentional

24  infliction of emotional distress, but in the body of the claim,

25  he refers to negligence of the Defendants. (Cmplt. pages 19-20.)

26      Under California law, the elements of intentional infliction

27  of emotional distress are: (1) extreme and outrageous conduct by

28  the defendant with the intention of causing, or reckless

37

1  disregard of the probability of causing, emotional distress; (2)

2  the plaintiff's suffering severe or extreme emotional distress;

3  and (3) actual and proximate causation of the emotional distress

4  by defendant's outrageous conduct. Sabow v. United States, 93

5  F.3d 1445, 1454 (9th Cir. 1996) (citing to Christensen v.

6  Superior Court, 54 Cal.3d 868 (1991)) (quotations omitted).

7      Further, "the negligent causing of emotional distress is not

8  an independent tort, but the tort of negligence," Burgess v.

9  Superior Court, 831 P.2d 1197, 1200 (Ct. App. 1992), and

10  "contains the traditional elements of duty, breach of duty,

11  causation and damages." Jacoves v. United Merchandising Corp., 9

12  Cal.App.4th 88, 106 (Ct. App. 1992).

13     Here, Plaintiff's allegations of negligence are generally

14  conclusional. (Id. at ¶¶ 28, 31, 33.) It is unclear which type of

15  conduct resulting in emotional distress Plaintiff is alleging, or

16  whether he is in fact alleging either or both claims. The nature

17  of Plaintiff's claim in this case is too uncertain to give any

18  defendant notice of the gravamen of his compliant. However,

19  Plaintiff will be given an opportunity to clarify his allegations

20  in an amended complaint.

21     III. Leave to Amend

22     In summary, with the exception of a claim under EMTALA

23  against the Defendant hospital, Plaintiff has not stated a claim

24  and has not stated a basis for jurisdiction in this Court. The

25  complaint must be dismissed with leave to amend.

26     Should Plaintiff desire to proceed on the basis of only a

27  claim pursuant to the EMTALA, 42 U.S.C. § 1395dd, against

28  Defendant Hospital only, Plaintiff should inform the Court in a

writing without delay, and the undersigned Magistrate Judge will prepare findings and recommendations to dismiss the other claims, and will permit Plaintiff to proceed on the one claim.

However, should Plaintiff desire to state amended claims, the Court finds that it is possible that Plaintiff can allege a set of facts, consistent with the allegations, in support of the claim or claims that would entitle him to relief. Thus, the Court will grant Plaintiff an opportunity to amend the complaint to cure the deficiencies of this complaint. Failure to cure the deficiencies will result in dismissal of this action without leave to amend.

A complaint must contain a short and plain statement as required by Fed. R. Civ. P. 8(a)(2). Although the Federal Rules adopt a flexible pleading policy, a complaint must give fair notice and state the elements of the claim plainly and succinctly. Jones v. Community Redev. Agency, 733 F.2d 646, 649 (9th Cir. 1984). Plaintiff must allege with at least some degree of particularity overt acts which the defendants engaged in that support Plaintiff's claim. Id.

An amended complaint supercedes the original complaint, Forsyth v. Humana, Inc., 114 F.3d 1467, 1474 (9th Cir. 1997); King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987), and must be "complete in itself without reference to the prior or superceded pleading," Local Rule 15-220. Plaintiff is warned that "[a]ll causes of action alleged in an original complaint which are not alleged in an amended complaint are waived." King, 814 F.2d at 567 (citing to London v. Coopers & Lybrand, 644 F.2d 811, 814 (9th Cir. 1981)); accord Forsyth, 114 F.3d at 1474.

1       IV. <u>Disposition</u>

2       _____Accordingly, it IS ORDERED that:

3       1) Plaintiff's application to proceed in forma pauperis IS

4   GRANTED; and

5       2) Plaintiff's Plaintiff's complaint IS DISMISSED with leave

6   to amend; and

7       3) Plaintiff IS GRANTED thirty days from the date of service

8   of this order to file an amended complaint that complies with the

9   requirements of the pertinent substantive law, the Federal Rules

10  of Civil Procedure, and the Local Rules of Practice; the amended

11  complaint must bear the docket number assigned this case and must

12  be labeled "First Amended Complaint"; failure to file an amended

13  complaint in accordance with this order will be considered to be

14  a failure to comply with an order of the Court pursuant to Local

15  Rule 11-110 and will result in dismissal of this action.

16

17  IT IS SO ORDERED.

18  **Dated:   April 4, 2008**                    **_____/s/ Sandra M. Snyder_____**
                                         UNITED STATES MAGISTRATE JUDGE
19

20

21

22

23

24

25

26

27

28