**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MICHAEL TATER-ALEXANDER,<br><br>    Plaintiff,<br><br>v.<br><br>LONNIE R. AMERJAN, individually and in his official capacity; CITY OF CLOVIS, a municipal corporation; TINA STIRLING, individually and in her official capacity; COMMUNITY REGIONAL MEDICAL CENTER, an entity of unknown form; DR. THOMAS MANSFIELD, an individual; MARILYN JO GREENE, an individual; and DOES 1 through 100, as entities of unknown form and unknown capacities,<br><br>    Defendants. | 1:08-CV-00372-OWW-SMS<br><br>MEMORANDUM DECISION AND ORDER RE: DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST, THIRD, NINTH, TWELFTH, AND FOURTEENTH CAUSES OF ACTION(DOC. 64) |

## I. INTRODUCTION.

Plaintiff Michael Tater-Alexander ("Tater-Alexander") raises a multitude of federal and state law claims stemming from the Defendants alleged refusal of emergency medical care and the disclosure of his confidential medical diagnosis.

This matter is before the court on a motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), filed by Defendant Dr. Thomas E. Mansfield ("Mansfield"). Plaintiff opposes the motion.

## II. BACKGROUND.[1]

### A. The Parties

Plaintiff is an individual and resident of the City of Clovis. (SAC ¶ 8.) Plaintiff suffers from certain physiological disorders impairing his neurological and musculoskeletal systems. (*Id.* ¶ 9.) Plaintiff asserts that he is limited in many of his major life activities and that his disorder is exacerbated when he is subjected to cold temperatures. (*Id.* ¶¶ 10, 22, 35.)

Defendant Community Regional Medical Center ("Community Medical") is a not-for-profit health care provider located in Clovis, California. (*Id.* ¶ 14.) Defendant Dr. Mansfield, a board certified medical doctor, and Greene, a registered nurse, provide medical services to patients at Clovis Community Medical Center. (*Id.* ¶¶ 17-19.) Defendant City of Clovis is a municipal corporation within the State of California. (*Id.* ¶¶ 22-25.) Defendants Lonnnie Amerjan and Tina Stirling are peace officers employed by the City of Clovis. (*Id.*)

### B. Summary of the Complaint

At approximately 8:00 p.m. on March 17, 2007, Plaintiff presented at Community Medical's emergency department complaining of abdominal pain, loss of appetite, and an inability to drink liquids. (*Id.* ¶ 29.) Plaintiff was seen by Dr. Mansfield and Nurse Greene, who requested that he put on a hospital gown prior to an examination. (*Id.* ¶ 34.) Plaintiff refused and told Mansfield

---

[1] The facts are taken from Plaintiff's Second Amended Complaint. (*See* Pl.'s Second Amended Compl. ("SAC"), filed January 9, 2009.)

2

and Greene that he suffered from a certain disorder, which caused him severe pain when subjected to cold temperatures. (*Id.* ¶ 35.) Plaintiff requested that Mansfield and Greene perform the examination with his clothes on. (*Id.*) Mansfield and Greene refused to exam Plaintiff unless he put on a hospital gown. (*Id.*)

Plaintiff then informed Mansfield and Greene of his disorder and the accommodations provided to him on prior occasions at Community Medical. (*Id.* ¶ 36.) Plaintiff specified that he had never been required to dress in a hospital gown. (Id.) Nonetheless, Mansfield and Greene reiterated that unless Plaintiff dressed in a hospital gown, they would not examine him. (*Id.* ¶ 37.) Plaintiff alleges that Mansfield and Greene then accused him of being a drug-seeker and malingerer and Mansfield expressed distaste for Plaintiff personally, including his lifestyle. (*Id.* ¶ 38.)

Between 9:00-10:30 p.m., Officers Sterling and Amerjan, responding to a call about an uncooperative patient, arrived at Community Medical Center. (*Id.* ¶¶ 41, 45.) Stirling approached Plaintiff, who was now in a hospital bed, and asked him why he refused to put on a hospital gown. (*Id.* ¶ 42) Plaintiff stated that he suffered from a disorder that caused him to experience severe pain when subjected to cold temperatures. (*Id.* ¶ 42) Stirling inquired as to Plaintiff's disorder, but he refused to disclose it. (*Id.* ¶ 43) At this time, Plaintiff, Stirling, Aberjan, and Greene were the only individuals in the room. (*Id.*)

Greene, Stirling, and Amerjan then moved into an adjacent hallway to conduct a conversation. (*Id.* ¶ 48) Following the conversation, Greene, Stirling, and Amerjan returned to Plaintiff's

3

room and advised him that they wanted to perform certain tests on him. (*Id.*) Plaintiff alleges that the tests mentioned are those used to verify his undisclosed medical condition. (*Id.*)

Greene, Stirling, and Amerjan then moved into the hallway for a second time. (*Id.* ¶ 50) When they returned to the room, Amerjan ordered Plaintiff to leave the hospital. (*Id.*) Plaintiff refused to leave and repeated his requests for a "clothes on" medical exam. (*Id.* ¶ 57.) Mansfield and Green again refused to provide medical care to Plaintiff unless he put on a hospital gown. (*Id.* ¶ 60.)

At around 6:00 a.m. on March 18, 2007, Plaintiff was examined at Community Medical by Dr. Gurchuran Singh and a House Supervisor. (*Id.* ¶ 61.) Plaintiff was eventually diagnosed with having an acute pancreatic pseudocyst and, a few days later, his pancreas was removed. (*Id.* ¶¶ 62-63).

C. <u>Procedural History</u>

On March 14, 2008, Plaintiff filed a complaint in the U.S. District Court, Eastern District of California, against the City of Clovis, Lonnie Amerjan, Tina Stirling, Community Regional Medical Center, Nurse Greene, and Dr. Mansfield. Plaintiff brings claims under the Emergency Medical Treatment and Active Labor Act ("EMTALA") and the Health Insurance Portability and Accountability Act ("HIPAA"), among other federal claims. Plaintiff also raises several supplemental state law claims, including medical malpractice, false imprisonment, and intentional infliction of emotional distress ("IIED").

Before the court for decision is Dr. Mansfield's motion to

dismiss the following claims from Plaintiff's Second Amended Complaint: (1) Plaintiff's First Cause of Action for EMTALA violations; (2) Plaintiff's Third Cause of Action for violations of the right to privacy and HIPAA; (3) Plaintiff's Ninth Cause of Action for a violation of California's Confidentiality of Medical Information Act ("CMIA"); (4) Plaintiff's Twelfth Cause of Action for false imprisonment; and (5) Plaintiff's Fourteenth Cause of Action for IIED.

### III. <u>STANDARD OF REVIEW</u>.

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint. *Novarro v. Black*, 250 F.3d 729, 732 (9th Cir. 2001). While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, it is required to contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1964-65, 167 L.Ed.2d 929 (2007); *see also Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997) (issue is not whether plaintiff will ultimately prevail, but whether claimant is entitled to offer evidence to support the claim). Dismissal is warranted under Rule 12(b)(6) where the complaint lacks a cognizable legal theory or where the complaint presents a cognizable legal theory yet fails to plead essential facts under that theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984). In

5

deciding a motion to dismiss, the court accepts as true all material factual allegations in the complaint and construes them in the light most favorable to the plaintiff. *See Newman v. Sathyavaglswaran*, 287 F.3d 786, 788 (9th Cir. 2002).

The court need not accept as true allegations that contradict facts which may be judicially noticed. *See Mullis v. United States Bankruptcy Ct.*, 828 F.2d 1385, 1388 (9th Cir. 1987). For example, matters of public record may be considered, including pleadings, orders, and other papers filed with the court or records of administrative bodies, *see Mack v. South Bay Beer Distributors, Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986), while conclusions of law, conclusory allegations, unreasonable inferences, or unwarranted deductions of fact need not be accepted. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *see also Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994) ("[A] document is not 'outside' the complaint if the complaint specifically refers to the document and if its authenticity is not questioned."). Allegations in the complaint may be disregarded if contradicted by facts established by exhibits attached to the complaint. *Sprewell*, 266 F.3d at 988. Thus when ruling on a motion to dismiss, the court may consider facts alleged in the complaint, documents attached to the complaint, documents relied upon but not attached to the complaint when authenticity is not contested, and matters of which the court may take judicial notice. *Parrino v. FHP, Inc.*, 146 F.3d 699, 705-06 (9th Cir. 1988).

*//*
*//*
*//*

## IV. DISCUSSION.

**A. EMTALA.**

Plaintiff's First Cause of Action alleges that Dr. Mansfield violated EMTALA. Dr. Mansfield seeks dismissal of this claim on the grounds that EMTALA does not provide a private cause of action against individual physicians. Plaintiff does not oppose Dr. Mansfield's motion. (*See* Plaintiff's Opposition ("Pl.'s Opp."), Page 5, ln. 14-15, filed Apr. 10, 2009.)

Therefore, Dr. Mansfield's motion to dismiss Plaintiff's claim against him under EMTALA is GRANTED WITHOUT LEAVE TO AMEND.

**B. Disclosure of Plaintiff's Medical Diagnosis.**

Plaintiff's Third and Ninth Causes of Action allege that Dr. Mansfield disclosed his confidential medical diagnosis to the Clovis Police. Plaintiff alleges that such a disclosure is a violation of HIPAA, CMIA, and his rights to privacy. Specifically, Plaintiff alleges that Dr. Mansfield and Nurse Greene refused to provide Plaintiff with medical care unless he changed into a hospital gown. (SAC ¶ 35.) A few hours later the Clovis Police arrived and spoke with Nurse Greene, who allegedly disclosed Plaintiff's medical condition. (*Id.* ¶¶ 47-48.) Plaintiff does not allege that Dr. Mansfield was present during or aware of this conversation. (*Id.*) Plaintiff contends that "it is reasonable to infer that [Dr. Mansfield] authorized or acquiesced in, if not personally made, the disclosure of plaintiff's confidential medical information to the police." (Pl.'s Opp. at Page 6, ln. 26-28).

**1. HIPAA Claims**.

Dr. Mansfield seeks dismissal of Plaintiff's HIPAA claims on the grounds that HIPAA does not provide a private right of action. Plaintiff does not oppose Dr. Mansfield's motion. *See* Pl.'s Opp'n, Page 5, lines 14-15.

Dr. Mansfield's motion to dismiss Plaintiff's claim against him under HIPAA is GRANTED WITHOUT LEAVE TO AMEND.

**2. Claims under the CMIA and Plaintiff's Rights to Privacy[2]**

Defendant Dr. Mansfield seeks dismissal of Plaintiff's CMIA and privacy claims on the grounds that any communication, if one was indeed made by defendant, is privileged under California Civil Code § 47.[3] Under both the CMIA and the common law right to privacy, a patient's medical information should not be disclosed by health care providers, subject to a number of exceptions and privileges. A violation occurs if a health care provider makes an unauthorized, unexcused disclosure of privileged medical information. *See generally Heller v. Norcal Mut. Ins. Co.*, 8 Cal. 4th 30, 38 (1994).

Section 47(b) of the California Civil Code bars a civil action

---

[2] The CMIA and privacy present identical legal frameworks regarding the disclosure of medical information. Plaintiff's and Defendant's briefs are presented in the same manner. Thus, they are discussed simultaneously.

[3] Defendant also moves to dismiss these claims on the basis that plaintiff has failed to set forth sufficient facts to support allegations that he disclosed or acquiesced in the disclosure of plaintiff's medical condition. Because the litigation privilege applies to any statements made by defendant, it does not reach the merits of this argument.

for damages based on statements: (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action. *A.F. Brown Elec. Contractor, Inc. v. Rhino Elec.*, 137 Cal. App. 4th 1118, 1126 (2006). Section 47(b) establishes an absolute privilege for such statements and bars all tort causes of action based on them except a cause of action for malicious prosecution. *Hagberg v. California Federal Bank*, 32 Cal.4th 350, 360 (2004). The California Supreme Court has explicitly held that "a communication concerning possible wrongdoing, made to an official governmental agency such as a local police department, and which communication is designed to prompt action by that entity is as much a part of an 'official proceeding' as a communication made after an official investigation has commenced." *Id.* As such, § 47(b) grants immunity to persons who report crimes to the police, even if the report is made in bad faith, in order to provide an "open channel of communication by which citizens can call attention to suspected wrongdoing." *Id.*

The policy underlying the privilege is to assure "utmost freedom of communication between citizens and public authorities whose responsibility it is to investigate and remedy wrongdoing." *Hunsucker v. Sunnyvale Hilton Inn*, 23 Cal. App. 4th 1498, 1503 (1994). The importance of providing to citizens "free and open access to governmental agencies for the reporting of suspected illegal activity outweighs the occasional harm that might befall a defamed individual." *Williams v. Taylor*, 129 Cal. App. 3d 745, 753-54 (1982).

Plaintiff's allegations, even read in the light most favorable to him, implicate the litigation privilege. Plaintiff alleges that Dr. Mansfield either contacted the police or ratified Nurse Greene's disclosure of his medical diagnosis to police. (Pl.'s Opp. Page 6, ln. 26-28.) As noted above, Dr. Mansfield's alleged disclosure was a "communication intended to instigate official investigation into [suspected] wrongdoing" and was made to "prompt an official investigation that may result in the initiation of judicial proceedings" *Hagberg* at 361-365, 369. As such, it was privileged.

Plaintiff further claims it was unnecessary for the police to know his medical history to determine whether he should have been ejected from the hospital. (Pl.'s Opp. at Pg. 6, ln. 14-16.) Here, Plaintiff's confidential medical diagnosis provided the basis for the dispute between himself and hospital employees. Specifically, Plaintiff's refusals to put on a hospital gown - on account of his medical diagnosis - prompted medical staff to contact the police. Under the circumstances alleged in Plaintiff's second amended complaint, the policies underlying the litigation privilege are best served by not holding defendant liable for disclosures directly relevant to the report of suspected wrongdoing, which would chill the "freedom of communication between citizens and public authorities." Defendant's disclosure of Plaintiff's medical condition to the Clovis Police, if it indeed occurred, was privileged.

The motion to dismiss Plaintiff's CMIA and privacy claims are **GRANTED WITH PREJUDICE.**

**D.   False Imprisonment**

Plaintiff's Twelfth Cause of Action alleges that defendant falsely imprisoned him. Defendant contends that this claim should be dismissed because plaintiff does not allege facts demonstrating that Dr. Mansfield restrained him or compelled him to remain where he did not wish to go.

California's tort of false imprisonment consists of the intentional confinement of another against the person's will. To state a claim, plaintiff must demonstrate: (1) non-consensual, intentional confinement of a person, (2) without lawful privilege, (3) for an appreciable period of time, however brief. *Scofield v. Critical Air Medicine, Inc.*, 45 Cal. App. 4th 990 (1996). Physical force is not the only means of restraint which will support a finding of false imprisonment. *Schanafelt v. Seaboard Fin. Co.* 108 Cal. App. 2d 420, 422-423, (1951). Words or conduct furnishing a reasonable apprehension on the part of the one restrained is sufficient. *Id*.

Viewed in the light most favorable to Plaintiff, his allegations fail to give rise to a colorable claim for false imprisonment against defendant Dr. Mansfield. Specifically, Plaintiff has not alleged any facts that give rise to a reasonable inference that Dr. Mansfield's conduct imposed a restraint on Plaintiff's liberty. Plaintiff alleges that Dr. Mansfield and Nurse Greene refused to provide Plaintiff with medical care unless he changed into a hospital gown. (SAC ¶ 37.) A few hours later the Clovis Police arrived and spoke with Nurse Greene. (*Id.* ¶ 47.) The Clovis Police then asked Plaintiff to leave the hospital and gave him several options to remove himself from the premises. (*Id.*

11

¶ 50.) Plaintiff does not allege that Dr. Mansfield notified the police regarding Plaintiff's alleged uncooperative behavior. Nor does plaintiff allege that Dr. Mansfield was either present or aware of Plaintiff's conversation with Nurse Green. Plaintiff has failed to allege any facts that give rise to an inference that Dr. Mansfield was personally involved in or the cause of any restraint on Plaintiff's freedom.

Plaintiff has failed to plead facts in his second amended complaint to sufficiently support a theory of false imprisonment, thus Dr. Mansfield's motion to dismiss is GRANTED. In his opposition, Plaintiff requests the opportunity to amend his pleadings. Plaintiff must comply with the requirements of Rule 11 if he amends. Plaintiff is granted leave to amend the complaint.

E. <u>Intentional Infliction of Emotional Distress</u>

Plaintiff's Fourteenth Cause of Action alleges that Defendant Dr. Mansfield's conduct constitutes intentional infliction of emotional distress.

The elements of the tort of intentional infliction of emotional distress are: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. *Potter v. Firestone* 6. Cal. 4th 965, 1001 (1999); *Delfino v. Agilent Technology, Inc.*, 145 Cal. App. 4th 790, 808 (2006). For conduct to be extreme and outrageous, it must be "so extreme as to exceed all bounds of that usually tolerated in a

12

civilized community." *Potter*, 6 Cal. 4th at 1001; *Delfino*, 145 Cal. App. 4th at 809. Ordinarily, mere profanity, obscenity, abuse, indignity, insult or threats, without aggravating circumstances, is not sufficiently outrageous. *Yurick v. Superior Court*, 209 Cal. App. 3d 1116, 1128-29, (1989). However, some statements, if sufficiently outrageous or if uttered by a person in a particular position vis-a-vis the complainant, may satisfy the outrageousness requirement. *Alcorn v. Anbro Eng'g, Inc.*, 2 Cal. 3d 493, 498 (1970).

The extreme and outrageous character of the conduct may arise from the actor's knowledge that the other is peculiarly susceptible to emotional distress, by reason of some physical or mental condition or peculiarity. *Golden v. Dungan*, 20 Cal. App. 3d 295, 303 n.6 (1971). Proof of the intent of the actor to cause such harm may be supplied by proof of circumstances showing that the conduct was of a nature that reasonably should have been recognized as likely to cause the harm sustained. *Spackman v. Good*, 245 Cal. App. 2d 518, 530 (1966). Further, whether a particular statement is sufficiently outrageous is a question of fact best decided on summary judgment or at trial. *See Yurick*, 209 Cal. App. 3d at 1128 ("[T]he standard for judging outrageous conduct does not provide a 'bright line' rigidly separating that which is actionable from that which is not. Indeed, its generality hazards a case-by-case appraisal of conduct filtered through the prism of the appraiser's values, sensitivity threshold, and standards of civility.").

Taking the allegations in the second amended complaint as true and drawing all reasonable inferences therefrom, Plaintiff's allegations are sufficient to state a claim for IIED. First,

13

accepting Plaintiff's allegations as true, he has alleged "affirmative misconduct" on the part of Dr. Mansfield. Specifically, Plaintiff alleges that Defendant made disparaging remarks about his character and lifestyle while he was awaiting emergency medical care. (SAC ¶ 38.) He further alleged that Defendant – with full knowledge of his medical diagnosis – refused to treat him and that this delay caused the removal of his pancreas. (*Id.* ¶ 35, 63.) Plaintiff has adequately described Dr. Mansfield's affirmative conduct.

The complaint sufficiently pleads the issue of outrageousness. Given the nature of Dr. Mansfield's statements, his knowledge of Plaintiff's diagnosis, and the presence of the doctor-patient relationship, the allegations must be accepted at this stage of the case. *See Alcorn*, 2 Cal. 3d 493, 498 (stating that "a defendant's awareness of the plaintiff's susceptibility to emotional distress is a significant factor in determining liability").

Defendant's motion to dismiss Plaintiff's IIED claim is DENIED.

### IV. CONCLUSION.

Based on the above memorandum opinion, the Court ORDERS that:

1. Defendant's motion to dismiss Plaintiff's claim against him under EMTALA is GRANTED WITHOUT LEAVE TO AMEND.
2. Defendant's motion to dismiss Plaintiff's claim against him under HIPAA is GRANTED WITHOUT LEAVE TO AMEND.
3. Defendant's motion to dismiss Plaintiff's CMIA and privacy claims are GRANTED WITHOUT LEAVE TO AMEND.

**4. Defendant's motion to dismiss Plaintiff's false imprisonment claim is GRANTED WITH LEAVE TO AMEND.**
**5. Defendant's motion to dismiss Plaintiff's IIED claim is DENIED.**

**Plaintiff shall file an amended complaint within twenty (20) days following electronic service of this order.**

IT IS SO ORDERED.

**Dated: May 4, 2009**                    **/s/ Oliver W. Wanger**
                                        UNITED STATES DISTRICT JUDGE