1

2

3

4

5

6                    UNITED STATES DISTRICT COURT

7                   EASTERN DISTRICT OF CALIFORNIA

8

9   MICHAEL TATER-ALEXANDER,        )   1:08-cv-0372 OWW SMS
                                     )
10               Plaintiff,          )   SCHEDULING CONFERENCE ORDER
                                     )
11      v.                           )   Discovery Cut-Off: 10/11/10
                                     )
12  LONNIE R. AMERJAN, an individual )   Non-Dispositive Motion
    in his official capacity as a    )   Filing Deadline: 10/15/10
13  Police Officer for the City of   )
    Clovis; CITY OF CLOVIS, a        )   Dispositive Motion Filing
14  municipal corporation; TINA      )   Deadline: 11/1/10
    STERLING, individually and in    )
15  her official capacity as a       )   Settlement Conference Date:
    Police Officer for the City of   )   10/20/10 10:00 Ctrm. 7
16  Clovis; FRESNO COMMUNITY         )
    HOSPITAL & MEDICAL CENTER dba     )   Pre-Trial Conference Date:
17  COMMUNITY REGIONAL MEDICAL       )   1/3/11 11:00 Ctrm. 3
    CENTER, a California non-profit  )
18  corporation; DR. THOMAS E.       )   Trial Date: 2/15/11 9:00
    MANSFIELD, an individual, and    )   Ctrm. 3 (JT-15 days)
19  MARILYN JO GREENE, an            )
    individual; and DOES 1-100, as   )
20  entities of unknown form and     )
    unknown capacity,                )
21                                   )
                 Defendants.         )
22                                   )
    _____)

23

24

25  I.   Date of Scheduling Conference.

26       June 5, 2009.

27  II.  Appearances Of Counsel.

28       The Law Firm of Kallis & Associates, P.C., by M. Jeffery

                                1

1 Kallis, Esq., and Bustamante, O'Hara & Gagliasso, P.C. by

2 Ignascio G. Camarena, II, Esq., appeared on behalf of Plaintiff.

3      Law Offices of Benjamin L. Ratliff by Benjamin L. Ratliff,

4 Esq., appeared on behalf of Defendants Lonnie R. Amerjan, City of

5 Clovis, and Tina Stirling ("Clovis Parties").

6      Stammer, McKnight, Barnum & Bailey LLP by Carey H. Johnson,

7 Esq., appeared on behalf of Defendants Fresno Community Hospital

8 and Medical Center dba Community Regional Medical Center and

9 Marilyn Jo Greene, R.N.

10      McCormick, Barstow, Sheppard, Wayte & Carruth by Daniel L.

11 Wainwright, Esq., appeared on behalf of Defendant Thomas

12 Mansfield, M.D.

13 III.  Summary of Pleadings.

14      1.   On or about March 17, 2007 at approximately 8:00 p.m.,

15 Mr. Alexander sought emergency medical examination and treatment

16 at Community Regional for severe abdominal pain, a loss of

17 appetite, and an inability to drink liquids.

18      2.   Mr. Alexander was initially seen by Dr. Mansfield and

19 Nurse Greene, who asked him to undress and put a hospital gown on

20 for examination before treatment could commence.

21      3.   At that time, Mr. Alexander told Dr. Mansfield and

22 Nurse Greene that he suffered from a disorder that caused him to

23 suffer severe pain when he is exposed to cold temperatures and

24 asked that they allow him to keep his clothes on during the

25 emergency room examination.  Dr. Mansfield and Nurse Greene

26 refused to perform an examination unless plaintiff submitted to

27 their demands.

28      4.   Plaintiff informed Dr. Mansfield and Nurse Greene of

2

his disorder and the accommodating treatment he had been provided on several prior occasions.  He further informed defendants that the previous treatment had been provided without the need to remove his clothes and expose him to severe pain from the cold. Despite giving a detailed history of his injuries and requesting specific medical treatment and care, plaintiff was denied adequate and competent medical treatment and care.

5.    Notwithstanding the plaintiff's explanation or the information readily available in Community Regional records, Dr. Mansfield and Nurse Greene continued to refuse to perform an adequate and professional screening examination or treat Mr. Alexander, including but not limited to, taking vital signs, drawing blood, administering an IV and pain medication, and performing a CT scan.  They stated that they would only perform such examination if he undressed and put on a hospital gown.

6.    To protest the refusal of emergency medical examination and treatment, Mr. Alexander requested a patient's advocate. Defendants refused to honor his request.

7.    Instead, Community Regional called the Clovis Police to confront Mr. Alexander in the emergency exam room.  Said defendants knew that a delay in his treatment would cause prolonged pain and suffering and cause further medical damage. As such, defendants' attempt to have the police remove Mr. Alexander was done with conscious disregard for the known risks and prolonged discomfort.

8.    Officer Stirling arrived sometime between approximately 9:00 p.m. and 10:30 p.m.  Mr. Alexander was lying down on a hospital bed at the time.  Upon her arrival, she inquired as to

why plaintiff was not putting on a gown.  Mr. Alexander told Officer Stirling that he had a "medical condition" (so as to maintain his privacy).  He further stated that his medical condition caused him to suffer extreme pain to exposure to cold that prevented him from undressing and putting on a hospital gown.

9.   Officer Stirling urged Mr. Alexander to disclose his condition and waive his right to privacy in the presence of Nurse Greene and Corporal Amerjan, who stepped from behind a curtain he was hiding behind during this conversation.  Mr. Alexander specifically told them that he would not waive his right to physician-patient confidentiality or other privacy rights.

10.  As Corporal Amerjan appeared from behind the curtain, he told Mr. Alexander, "We know who you are Mr. Alexander...Mr. Jacoby & Meyers [a well-known plaintiffs' law firm]," implying that Mr. Alexander was "notorious" for exercising his rights.

11.  Mr. Alexander then asked the officers why they were in the emergency exam room area.  Corporal Amerjan responded that they had received a report of an "uncooperative patient" from Community Regional.

12.  Mr. Alexander was surprised at the characterization as he had never done anything more than refuse to undress and put on a hospital gown due to his disorder.

13.  The officers and Nurse Greene left the room and talked in the hallway.  When they came back in the room, Corporal Amerjan ordered Mr. Alexander to immediately leave because Community Regional did not want to treat him.

14.  Corporal Amerjan approached Mr. Alexander, reaching for

**4**

his right arm and said "Let's go" at which point Mr. Alexander did not feel free to go about his business.  Corporal Amerjan limited Mr. Alexander's freedom by saying he had to: (1) call a taxicab so that he could seek treatment at another medical facility; (2) be driven in a patrol car to another medical facility; (3) call someone to pick him up; or (4) be escorted to his personal vehicle.  Further, Corporal Amerjan and Officer Stirling did not allow Mr. Alexander to walk around the emergency room despite his request to do so as a means of easing his pain.

15.  Mr. Alexander, suffering from excruciating abdominal pain and dehydration during this entire ordeal which had by now lasted several hours, refused to leave and again asked to be examined and treated by Community Regional.

16.  Plaintiff told the officers they were unlawfully interfering with his ability to secure emergency medical treatment.  Mr. Alexander then told the officers to either arrest him formally or leave him alone to seek emergency medical treatment from Community Regional.  Corporal Amerjan stated that he recognized that this was a civil matter between Community Regional and Mr. Alexander.

17.  Mr. Alexander asked the officers to leave and requested medical treatment and a patient's advocate.  They again refused. Plaintiff further requested that the officers take a report from him regarding Community Regional's conduct and refusal to treat him.  But the officers refused to take a report or complaint from Mr. Alexander.  The officers eventually left.

18.  After the officers left, Community Regional, by and through Dr. Mansfield and Nurse Greene, continued to refuse

1  treatment unless Mr. Alexander undressed and put on a hospital
2  gown.  The House Supervisor Katherine K. Eventually administered
3  an IV and drew blood for testing.

4       19.  However, it was not until approximately 6:00 a.m. the
5  next day (March 18, 2007) when Dr. Gurchuran Singh arrived that
6  Community Regional finally examined and treated Mr. Alexander.
7  Dr. Singh provided pain medication through Mr. Alexander's left
8  hand without requiring him to undress and put on a gown and
9  eventually drained the pancreatic pseudocyst.

10      20.  Approximately 12 hours after Mr. Alexander first
11 arrived at Community Regional in severe pain, it was determined
12 that he had an acute pancreatic pseudocyst and truly suffered
13 from severe abdominal pain.  500cc (16 oz.) of fluid was drained
14 from the pancreatic pseudocyst and Mr. Alexander was hospitalized
15 for several days.

16      21.  Unfortunately this treatment came too late.  His
17 pancreas went into complete failure and ultimately caused
18 diabetes from fluid pressure on the pancreas due to the prolonged
19 denial of treatment by Community Regional and Nurse Greene and
20 the complete refusal of treatment by Dr. Mansfield.

21      **Principal Legal Issues**

22      22.  Whether Community Regional violated the Emergency
23 Medical Treatment and Active Labor Act ("EMTALA") by refusing
24 examination and treatment to Mr. Alexander solely because his
25 medical disability prevented him from putting on a hospital gown
26 without enduring extreme pain and discomfort from the cold.

27      23.  Whether Community Regional violated the Americans with
28 Disabilities Act ("ADA") by refusing to accommodate Mr.

**6**

1  Alexander's medical condition and providing medical examination

2  and treatment while he remained in his own clothes, as it had

3  done on prior occasions.

4       24.   Whether Clovis and its police officers violated Mr.

5  Alexander's First, Fourth, Eighth, and Fourteenth Amendment

6  rights by committing the acts alleged above.

7       25.   Whether each defendant violated Mr. Alexander's right

8  to equal access to public accommodations under the California

9  Unruh Civil Rights Act by refusing and interfering with his

10 ability to seek medical examination and treatment.

11      26.   Whether each defendant violated Mr. Alexander's right

12 to seek medical treatment under the California Disabled Persons

13 Act based on his medical disability and condition.

14      27.   Whether Community Regional, Dr. Mansfield, and Nurse

15 Greene committed medical malpractice by refusing medical

16 examination and treatment to Mr. Alexander because his disability

17 prevented him from wearing a hospital gown without enduring

18 extreme pain and discomfort from the cold.

19      28.   Whether Clovis and its police officers falsely arrested

20 Mr. Alexander when they restricted his movement at Community

21 Regional.

22      29.   Whether Corporal Amerjan assaulted Mr. Alexander when

23 they grasped his bed and told him "let's go" to get him to leave

24 Community Regional.

25      30.   Whether each defendant intentionally inflicted

26 emotional distress on Mr. Alexander by refusing or interfering

27 with his ability to seek medical examination and treatment

28 despite knowing (or reasonably should have known) he could not

1  wear a hospital gown without suffering extreme pain and

2  discomfort from the cold due to his medical disability.

3      31.   Whether Clovis and its police officers violated the

4  California Ban Act by preventing Mr. Alexander from seeking

5  medical treatment, and committing other civil rights violations,

6  under threat of force or coercion.

7      Clovis Parties' Statement

8      32.   Defendants City of Clovis, Lonnie Amerjan, and Tina

9  Stirling deny they violated any of Plaintiff's rights protected

10  by state or federal law.  These Defendants contend that at

11  approximately 10:33 p.m. on March 17, 2007, Corporal Amerjan and

12  Officer Stirling responded to Clovis Community Hospital after

13  receiving a call for service.  The officers spoke with Mr.

14  Alexander and left the hospital at approximately 11:23 p.m.

15     33.   Defendants City of Clovis, Lonnie Amerjan, and Tina

16  Stirling contend they did not cause any violation of plaintiff's

17  rights under federal or state law and their conduct was

18  objectively reasonable.  Defendants contend that there is no

19  basis for liability against the City of Clovis.  Further, the

20  individual defendants are entitled to qualified immunity.

21     Fresno Community Hospital's Statement

22     34.   Defendants Fresno Community Hospital and Medical

23  Center, dba Community Regional Medical Center, and Marilyn Jo

24  Greene, R.N., deny they violated any of plaintiff's rights

25  protected by Federal or State law.  These defendants contend that

26  the evening of March 17, 2007, the plaintiff came to Clovis

27  Community Hospital, a facility operated by Defendant Fresno

28  Community Hospital and Medical Center, complaining of abdominal

**8**

pain.  He refused to remove his clothing and put on a hospital gown so he could be properly examined, and became angry, started raising his voice, and causing a disturbance.  When he would not discontinue that conduct, the Clovis Police were called.

35.  Defendants contend they did not violate any of plaintiff's rights under Federal or State law and that their conduct was appropriate under the circumstances.  In addition to denying any wrongdoing, defendants allege the following defenses:

a.  Contributory negligence.

b.  Defendants are entitled to the limitations contained in California Civil Code §§ 3333.1 and 3333.2, and California Code of Civil Procedure § 667.7.

c.  Assumption of risk.

d.  Failure to mitigate damages.

e.  Comparative negligence.

f.  The liability of these defendants may be limited by reason of California Civil Code § 1431.2.

g.  Defendants' conduct may be privileged pursuant to California Civil Code §§ 56.10 and 56.1007, and damages may be limited pursuant to California Civil Code § 56.35.

h.  Disclosures regarding plaintiff's medical condition, if there were any, are privileged under California Civil Code § 47 and the litigation privilege.

i.  Plaintiff's complaint fails to state a cause of action for false imprisonment as to these answering defendants.

j.  Plaintiff's claim for violation of EMTALA is barred against Ms. Greene as EMTALA does not provide for a cause of action against an individual.

1          **Dr. Mansfield's Summary**

2          36.   Dr. Mansfield denies each and every allegation of the

3     Third Amended Complaint and further disputes the "facts" as

4     described by Plaintiff above.

5          37.   Dr. Mansfield, through California Emergency Medical

6     Associates, was an independent contractor providing Emergency

7     Medical care to the patients that arrived at the Emergency

8     Department of Clovis Community Hospital.

9          38.   Plaintiff was initially triaged by the nurses at the

10    hospital at approximately 7:02 p.m. with complaints of diffused

11    upper abdominal pain for the past week with occasional episodes

12    of nausea and vomiting and black, tarry stools for the past three

13    days.   He was describing very significant abdominal pain with a

14    past history of pancreatitis.

15         39.   Dr. Mansfield's records indicate that he first saw

16    plaintiff on March 17, 2007, at approximately 9:55 p.m.   At that

17    time, the notes of Nurse Greene indicated that Plaintiff refused

18    to change into a hospital gown and refused a physical assessment.

19    During Dr. Mansfield's physical examination of Plaintiff, it was

20    noted that he was in no acute distress but with reports of pain.

21    Dr. Mansfield also noted that Plaintiff refused to have

22    treatment, refused to take off his t-shirt for the IV, was

23    argumentative, was litigious, had a prior history of similar

24    behavior at the hospital, and a history of leaving against

25    medical advice.   Plaintiff made no mention to Dr. Mansfield of

26    any "disorder" that would have limited his functioning or ability

27    to change into a gown.

28         40.   Because Dr. Mansfield was not able to complete his

                              **10**

physical examination of Plaintiff and properly work him up, it was suggested that he be sent home because of his unwillingness to cooperate with the nurses and doctor's instructions and his ultimate refusal of medical treatment.  At approximately 10:15 p.m., Dr. Mansfield wrote some provisional orders for Plaintiff's care indicating that if he would remove his shirt and pants, then put on a hospital gown, that they could start an IV with normal saline and medications.  If not, then he was to be discharged from the hospital with a prescription for Protonix to treat his complained of condition.

41.  Dr. Mansfield noted at 10:24 p.m. that Plaintiff was becoming more belligerent and that hospital security was with the patient.  Plaintiff continued to refuse to comply with the removal of his shirt for the IV and CT scan.

42.  One or more officers from the Clovis Police Department arrived at the scene.  An officer did talk to Plaintiff and tried to assist in resolving this problem.  Apparently after talking to the hospital's house supervisor and individuals from the Clovis Police Department (at around 10:30 p.m.), Plaintiff decided to undergo the recommended treatment.  Thus, Dr. Mansfield, at 11:48 p.m., cancelled the earlier provisional orders and rewrote orders because Plaintiff was now going to cooperate with the suggested treatment plan.  These orders included normal saline, Protonix, and a urine drug screen.  Dr. Mansfield also ordered a CT scan of Plaintiff's abdomen.

43.  At 12:10 a.m. (now on March 18), Nurse Greene noted that Plaintiff was refusing to drink the CT contrast because of his nausea.  In addition, later entries reflect that Plaintiff

11

1  was refusing to cooperate with the CT technician.

2      44.   Nonetheless, by 5:26 a.m. on March 18, Plaintiff

3  underwent a CT scan of his abdomen/pelvis due to his abdominal

4  pain.  The findings showed a 3 cm lesion in the left hepatic

5  lobe, possible hemangioma, 9 x 13 cm cystic lesion inferior to

6  the stomach and pancreas, pseudocyst versus other pancreatic

7  lesion.

8      45.   Because of the pseudocyst, Dr. Mansfield thought that

9  Plaintiff needed to be admitted into the hospital so he could

10  undergo appropriate treatment which would likely be a CT guided

11  pseudocyst drainage.  At approximately 6:00 a.m., Dr. Gurcharan

12  Sidhu (who is not a party to this litigation) was paged by Dr.

13  Mansfield, called into the Emergency Department, and ultimately

14  agreed to admit the patient to the medical floor.  This

15  effectively ended the involvement Dr. Mansfield had with

16  Plaintiff.

17      46.   Dr. Sidhu noted that Plaintiff was found to have acute

18  pancreatic with pseudocysts by the Emergency Room physician,

19  thereby necessitating a hospitalization.  Dr. Sidhu felt that

20  Plaintiff needed IV fluids, pain control with medication, and to

21  have a pseudocyst drainage.  While in the hospital, an

22  interventional radiologist put a catheter into the psuedocyst for

23  drainage.  Ultimately, on March 20, 2007, plaintiff was

24  discharged from the hospital.

25      47.   The professional services and treatment provided to

26  Plaintiff by Dr. Mansfield at all times met the applicable

27  standard of care and was not a cause of harm or damage to

28  Plaintiff.

1    48.   Dr. Mansfield will defer to the various other
2  Defendants to provide the Court with their respective versions/
3  positions of the factual scenario involved in this case.

4    49.   In addition, did the conduct of Dr. Mansfield cause
5  Plaintiff to sustain any damage or harm?

6  IV.   Orders Re Amendments To Pleadings.

7    1.   Plaintiffs anticipate amending the complaint to
8  identify Doe Defendants as their true names and capacities are
9  ascertained through discovery.

10   2.   If the Plaintiff seeks to identify Does as individuals,
11  rather than entities, a Rule 15 motion may be made.

12   3.   The Clovis Parties do not anticipate amending
13  pleadings, except as may be required by any amendment by
14  Plaintiff.

15   4.   Dr. Mansfield does not anticipate amendments except in
16  response to any amendments by Plaintiff.

17   5.   Fresno Community does not anticipate amendments except
18  in response to any amendments by Plaintiff.

19  V.   Factual Summary.

20   A.   Admitted Facts Which Are Deemed Proven Without Further
21  Proceedings.

22     1.   Plaintiff is a resident of the Eastern District of
23  California, Fresno Division, and a citizen of the United States.

24     2.   Plaintiff has been treated as a patient at one or
25  more hospitals owned and/or operated by Fresno Community Hospital
26  and Medical Center.   The specifics will be disclosed at the time
27  that medical records for Plaintiff are produced as part of Rule
28  26 disclosures by the Hospital.

1        3.   The circumstances underlying the complaint

2  commenced when Plaintiff presented at the Clovis Community

3  Hospital Emergency Room on March 17, 2007.

4        4.   Fresno Community Hospital and Medical Center is a

5  non-profit corporation incorporated under the laws of the State

6  of California and licensed to do business in the State of

7  California with all licenses required to operate as a hospital.

8        5.   Corporal Lonnie R. Amerjan was at all times a duly

9  acting and authorized police officer for the City of Clovis.

10       6.   Tina Stirling was at all times a duly acting and

11  authorized Police Officer for the City of Clovis.

12       7.   Defendant Lonnie Amerjan was at all times acting

13  within the course and scope of his employment as a police officer

14  of the City of Clovis, and under color of law.

15       8.   Tina Stirling was at all times acting within the

16  course and scope of her employment as a police officer for the

17  City of Clovis and under color of law.

18       9.   On or about March 17 and 18, 2007, at the time

19  Plaintiff presented for treatment at Clovis Community Hospital,

20  Marilyn Jo Greene, R.N., was acting in the capacity of a nurse.

21     B.   Contested Facts.

22       1.   Whether Plaintiff is disabled within the meaning

23  of the Americans With Disabilities Act.

24       2.   The nature and extent of any disability Plaintiff

25  presented with at Community Hospital at the time of the incident.

26       3.   The nature of the conditions when Plaintiff

27  presented at the emergency room on March 17, 2007.

28       4.   Whether Plaintiff was indigent at the time of any

1   events applicable to this case.

2   VI.   Legal Issues.

3        A.   Uncontested.

4            1.   Jurisdiction exists under 28 U.S.C. §§ 1331 and

5   1367 as the supplemental jurisdiction of the Court is invoked.

6            2.   Venue is proper under 28 U.S.C. §§ 1391 et seq.

7            3.   The parties agree that the substantive law of the

8   State of California provides the rule of decision.

9            4.   Plaintiff reserves the right, once the agreement

10  concerning Plaintiff's treatment and care have been reviewed, to

11  amend the choice of law designation.

12       B.   Contested.

13           1.   All remaining legal issues are contested.

14  VII. Consent to Magistrate Judge Jurisdiction.

15       1.   The parties have not consented to transfer the

16  case to the Magistrate Judge for all purposes, including trial.

17  VIII.      Corporate Identification Statement.

18       1.   Any nongovernmental corporate party to any action in

19  this court shall file a statement identifying all its parent

20  corporations and listing any entity that owns 10% or more of the

21  party's equity securities.  A party shall file the statement with

22  its initial pleading filed in this court and shall supplement the

23  statement within a reasonable time of any change in the

24  information.

25  IX.  Discovery Plan and Cut-Off Date.

26       1.   The parties agree that for percipient witnesses, the

27  time limits for hours of depositions shall be extended without a

28  limit as to time.

1    **2.**   Each party shall be entitled to propound up to 75
2    interrogatories.   Each party shall be entitled to propound up to
3    50 requests for admissions.

4    **3.**   The parties agree to suspend discovery limitations
5    provided by the Federal Rules of Civil Procedure and shall
6    proceed to conduct discovery in good faith.   The parties are
7    invited to contact the Court to request a discovery conference in
8    the event differences over discovery ensue.

9    **4.**   The parties have not undertaken any discovery to date.
10   The scope of anticipated discovery is to be framed by the
11   allegations in the pleadings.   At this time, there are no
12   proposed revisions or modifications to the rules of discovery.
13   The parties jointly propose the following discovery plan pursuant
14   to Fed. R. Civ. P. 26(f):

15   <u>Discovery will be needed on the following subjects</u>:

16   **5.**   Medical basis for refusing to examine and treat Mr.
17   Alexander.

18   **6.**   Why police were contacted.

19   **7.**   Communications between police and medical personnel.

20   **8.**   Factual basis for police action against Mr. Alexander.

21   **9.**   Medical and police reports related to this and/or prior
22   similar incidents at Community Regional.

23   **10.**   Opinions of experts concerning the failure and loss of
24   use of Mr. Alexander's pancreas and resulting onset of diabetes.

25   <u>Electronically stored information should be produced as</u>
26   <u>follows</u>:

27   **12.**   All electronically stored information relevant to this
28   action and the events giving rise to this action must be

**16**

1  preserved by the parties and disclosed.  Further, the parties

2  should advise each other of any negative consequences associated

3  with the destruction of such evidence, including but not limited

4  to the overwriting or deleting of electronic files.  *Thompson Co.*

5  *v. General Nutrition Corp.*, 593 F.Supp. 1443, 1455 (C.D. Cal.

6  1984); *Coleman (Parent) Holdings, Inc. v. Morgan Stanley & Co.,*

7  *Inc.*, 2005 WL 679071 (Fla. Cir. Ct. March 1, 2005); *In re Texlon*

8  *Corp. Sec. Litig.*, 2004 WL 3192792 (ND Ohio, July 2, 2004).

9       13.  For purposes of this statement, "electronically stored

10  information" includes, but is not limited to, the following:

11          a.   Text files (including word processing files and

12  file fragments);

13          b.   Spreadsheets;

14          c.   Electronic mail (including message contents,

15  attachments, header information, logs of e-mail system usage, and

16  "deleted" files);

17          d.   Data in the information management system,

18  containing the indexes of all databases;

19          e.   The databases themselves, including all records

20  and instructional information in them;

21          f.   Logs of activity on any computer system that may

22  have process or stored electronic data containing litigation

23  information;

24          g.   Data created by financial accounting, billing and

25  spreadsheet programs;

26          h.   Files and file fragments from electronic calendars

27  and scheduling programs;

28          i.   Internet history files and preferences;

17

1          j.    Graphical files in .gif, .jpg, or .tif format;

2          k.    All file fragments and backup files containing

3  electronic data;

4          l.    Telephone logs; and

5          m.    All other electronic data containing information

6  about or relevant to the litigation.

7      14.   Any pertinent information stored online - whether

8  stored in direct access storage devices attached to a mainframe

9  or microcomputer hard drive, personal computers or laptops - must

10 be preserved.  If any files must be altered for any reason, a

11 true and correct copy of each data file pertinent to the

12 litigation must be made, and the copy should be preserved and

13 made accessible.

14     15.   Any activity that could result in the loss of the

15 relevant "offline" data or removal data storage - such as backups

16 and archives or other disaster recovery systems, servers, floppy

17 disks, zip drives and zip files, optical discs, tapes, compact

18 discs or diskettes, laptops, handheld devices, disconnected hard

19 drives, and other removal electronic media - must be halted.

20 This includes rotation, destruction, over-writing, or erasure of

21 such media, including the disposal of any electronic data storage

22 devices or media that has failed or had to be replaced for other

23 reasons.

24     16.   Relevant information contained on any fixed hard drives

25 of stand alone personal computers and network work stations must

26 not be altered or erased.  Procedure such as data compression,

27 disc de-fragmentation, or optimization routines must not be

28 performed without first creating and preserving true and correct

18

1  copies of active files.  Also, true and correct copies of

2  completely restored versions of deleted electronic files and file

3  fragments, as well as directory and subsidiary lists, including

4  hidden files, must be created and maintained.

5       17.  Copies of all applications and utilities that process

6  pertinent information must be preserved and retained.

7       18.  Passwords, decryption procedures, including

8  accompanying software, network access codes, i.e., names,

9  manuals, tutorials, written instructions and decompression or

10 reconstruction software must be preserved.

11      19.  Any modifications made by employees or third parties to

12 any electronic data processing systems that may affect the

13 system's capacity to process data relevant to the instant

14 litigation should be logged and made available.

15      20.  All relevant hardware must be preserved and not

16 disposed of unless a true and correct copy of all files, i.e. "a

17 mirror image," is first created and preserved.

18      21.  With regard to any electronic data created after

19 receipt of this letter that might be relevant to this litigation,

20 proper steps must be taken to avoid destroying or altering such

21 potentially relevant evidence, including following the above

22 procedures.

23      22.  A copy of this statement should be provided to all

24 individuals or organizations that are responsible for any of the

25 procedures described above.

26      23.  Initial disclosures shall be made on or before July 6,

27 2009.  Fresno Community Hospital & Medical Center and all related

28 hospitals are ordered to produce such records as it can locate

1   for the treatment of the Plaintiff on the incident in dispute and

2   prior treatments of the Plaintiff.

3       24.   The parties are ordered to complete all discovery on or

4   before October 11, 2010.

5       25.   The parties are directed to disclose all expert

6   witnesses, in writing, on or before July 1, 2010.  Any rebuttal

7   or supplemental expert disclosures will be made on or before

8   August 10, 2010.  The parties will comply with the provisions of

9   Federal Rule of Civil Procedure 26(a)(2) regarding their expert

10  designations.  Local Rule 16-240(a) notwithstanding, the written

11  designation of experts shall be made pursuant to F. R. Civ. P.

12  Rule 26(a)(2), (A) and (B) and shall include all information

13  required thereunder.  Failure to designate experts in compliance

14  with this order may result in the Court excluding the testimony

15  or other evidence offered through such experts that are not

16  disclosed pursuant to this order.

17      26.   The provisions of F. R. Civ. P. 26(b)(4) shall

18  apply to all discovery relating to experts and their opinions.

19  Experts may be fully prepared to be examined on all subjects and

20  opinions included in the designation.  Failure to comply will

21  result in the imposition of sanctions.

22  X.   Pre-Trial Motion Schedule.

23      1.   All Non-Dispositive Pre-Trial Motions, including any

24  discovery motions, will be filed on or before October 15, 2010,

25  and heard on November 19, 2010, at 9:00 a.m. before Magistrate

26  Judge Sandra M. Snyder in Courtroom 7.

27      2.   In scheduling such motions, the Magistrate

28  Judge may grant applications for an order shortening time

1  pursuant to Local Rule 142(d).  However, if counsel does not

2  obtain an order shortening time, the notice of motion must comply

3  with Local Rule 251.

4       3.   All Dispositive Pre-Trial Motions are to be

5  filed no later than November 1, 2010, and will be heard on

6  December 6, 2010, at 10:00 a.m. before the Honorable Oliver W.

7  Wanger, United States District Judge, in Courtroom 3, 7th Floor.

8  In scheduling such motions, counsel shall comply with Local Rule

9  230.

10 XI.  Pre-Trial Conference Date.

11      1.   January 3, 2011, at 11:00 a.m. in Courtroom 3, 7th

12 Floor, before the Honorable Oliver W. Wanger, United States

13 District Judge.

14      2.   The parties are ordered to file a Joint Pre-

15 Trial Statement pursuant to Local Rule 281(a)(2).

16      3.   Counsel's attention is directed to Rules 281

17 and 282 of the Local Rules of Practice for the Eastern District

18 of California, as to the obligations of counsel in preparing for

19 the pre-trial conference.  The Court will insist upon strict

20 compliance with those rules.

21 XII. Motions - Hard Copy.

22      1.   The parties shall submit one (1) courtesy paper copy to

23 the Court of any motions filed that exceed ten pages and any

24 motions that have exhibits attached.  Exhibits shall be marked

25 with protruding numbered or lettered tabs so that the Court can

26 easily identify such exhibits.

27 XIII.  Trial Date.

28      1.   February 15, 2011, at the hour of 9:00 a.m. in

Courtroom 3, 7th Floor, before the Honorable Oliver W. Wanger, United States District Judge.

    2.    This is a jury trial.

    3.    Counsels' Estimate Of Trial Time:

        a.   15 days.

    4.    Counsels' attention is directed to Local Rules of Practice for the Eastern District of California, Rule 285.

XIV. Settlement Conference.

    1.    A Settlement Conference is scheduled for October 20, 2010, at 10:00 a.m. in Courtroom 7 before the Honorable Sandra M. Snyder , United States Magistrate Judge.

    2.    Unless otherwise permitted in advance by the Court, the attorneys who will try the case shall appear at the Settlement Conference with the parties and the person or persons having full authority to negotiate and settle the case on any terms at the conference.

    3.    Permission for a party [not attorney] to attend by telephone may be granted upon request, by letter, with a copy to the other parties, if the party [not attorney] lives and works outside the Eastern District of California, and attendance in person would constitute a hardship.  If telephone attendance is allowed, the party must be immediately available throughout the conference until excused regardless of time zone differences. Any other special arrangements desired in cases where settlement authority rests with a governing body, shall also be proposed in advance by letter copied to all other parties.

    4.    Confidential Settlement Conference Statement. At least five (5) days prior to the Settlement Conference the

1  parties shall submit, directly to the Magistrate Judge's

2  chambers, a confidential settlement conference statement.  The

3  statement should not be filed with the Clerk of the Court nor

4  served on any other party.  Each statement shall be clearly

5  marked "confidential" with the date and time of the Settlement

6  Conference indicated prominently thereon.  Counsel are urged to

7  request the return of their statements if settlement is not

8  achieved and if such a request is not made the Court will dispose

9  of the statement.

10       5.   The Confidential Settlement Conference

11  Statement shall include the following:

12            a.   A brief statement of the facts of the

13  case.

14            b.   A brief statement of the claims and

15  defenses, i.e., statutory or other grounds upon which the claims

16  are founded; a forthright evaluation of the parties' likelihood

17  of prevailing on the claims and defenses; and a description of

18  the major issues in dispute.

19            c.   A summary of the proceedings to date.

20            d.   An estimate of the cost and time to be

21  expended for further discovery, pre-trial and trial.

22            e.   The relief sought.

23            f.   The parties' position on settlement,

24  including present demands and offers and a history of past

25  settlement discussions, offers and demands.

26  XV.  Request For Bifurcation, Appointment Of Special Master,

27  Or Other Techniques To Shorten Trial.

28       1.   None.

23

XVI. Related Matters Pending.

    1.    There are no related matters.

XVII.      Compliance With Federal Procedure.

    1.    The Court requires compliance with the Federal Rules of Civil Procedure and the Local Rules of Practice for the Eastern District of California.  To aid the court in the efficient administration of this case, all counsel are directed to familiarize themselves with the Federal Rules of Civil Procedure and the Local Rules of Practice of the Eastern District of California, and keep abreast of any amendments thereto.

XVIII.      Effect Of This Order.

    1.    The foregoing order represents the best estimate of the court and counsel as to the agenda most suitable to bring this case to resolution.  The trial date reserved is specifically reserved for this case.  If the parties determine at any time that the schedule outlined in this order cannot be met, counsel are ordered to notify the court immediately of that fact so that adjustments may be made, either by stipulation or by subsequent scheduling conference.

    2.    Stipulations extending the deadlines contained herein will not be considered unless they are accompanied by affidavits or declarations, and where appropriate attached exhibits, which establish good cause for granting the relief requested.

///

///

///

///

24

1    3.    Failure to comply with this order may result in

2    the imposition of sanctions.

3

4

5    IT IS SO ORDERED.

6    Dated:    **June 8, 2009**                    **/s/ Oliver W. Wanger**
                                        UNITED STATES DISTRICT JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28