UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL TATER-ALEXANDER, | 1:08-cv-00372 OWW SMS |
| Plaintiff, | MEMORANDUM DECISION RE CROSS MOTIONS FOR SUMMARY JUDGMENT (DOCS. 115, 122, 130). |
| v. | |
| LONNIE R. AMERJAN, CITY OF CLOVIS, TINA STIRLING, COMMUNITY REGIONAL MEDICAL CENTER, DR. THOMAS E. MANSFIELD, MARY JO GREENE, and DOES 1 through 100. | |
| Defendants. | |

## I. INTRODUCTION

Plaintiff proceeds with this action for damages and equitable relief under the Americans with Disabilities Act ("ADA"), Unruh Civil Rights Act ("Unruh Act"), Disabled Persons Act ("DPA"), First Amendment, 42 U.S.C. § 1983, and Bane Civil Rights Act. Before the court are cross-motions for summary judgment.

## II. FACTUAL BACKGROUND

A. <u>Procedural History</u>

Plaintiff filed a complaint on March 14, 2008, amendments to the complaint were filed, and a third amended complaint ("TAC") was filed on May 27, 2009. The TAC alleges fifteen causes of

1

action.

On December 16, 2010, the parties stipulated to dismiss the first cause of action for violation of the Emergency Medical Treatment and Active Labor Act, eighth cause of action for medical malpractice, ninth cause of action for false arrest, tenth cause of action for assault, and eleventh cause of action for intentional infliction of emotional distress.

On November 1, 2010, Plaintiff filed a motion for partial summary judgment. Doc. 130. Plaintiff moves for partial summary judgment against Community Regional Medical Center ("Community Medical") on the second cause of action for violation of the ADA, sixth cause of action for violation of the Unruh Act, seventh cause of action for violation of the DPA, and fifteenth cause of action for injunctive relief. Plaintiff also moves for partial summary judgment against Dr. Thomas Mansfield on the sixth cause of action for violation of the Unruh Act and seventh cause of action for violation of the DPA. Doc. 130.[1] Defendants filed oppositions (Docs. 143, 153), to which Plaintiff replied (Docs. 180, 185).

On October 29, 2010, Dr. Mansfield filed a motion for summary judgment, or in the alternative, summary adjudication of the issues on all causes of action asserted against him. Doc. 122. Plaintiff filed an opposition (Doc. 159), to which Dr.

---

[1] Plaintiff does not move for summary judgment against Nurse Greene, the City of Clovis, Officer Sterling, or Corporal Amerjan.

Mansfield replied (Doc. 172).

On October 29, 2010, the City of Clovis, Tina Stirling, and Lonnie R. Amerjan (together, "Clovis Defendants") filed a motion for summary judgment, or in the alternative, summary adjudication of the issues on all the causes of action asserted against Clovis Defendants. Doc. 115. Plaintiff filed an opposition (Doc. 164), to which Clovis Defendants replied (Doc. 173).[2]

B. <u>Factual History</u>

1. <u>Undisputed Facts</u>

On June 9, 1994, the Department of Health and Human Services, Social Security Administration ("SSA"), Office of Hearing and Appeals held that Plaintiff "has been disabled since October 21, 1992" and "has the following impairments which are considered to be 'severe' under the Social Security Act and Regulations: cervical spine strain, lumbosacral spine strain and bilateral shoulder pain." Doc. 133, Ex. A, Bates No. 150. The SSA letter does not discuss any sensitivity to cold.

Plaintiff came into the Community Medical Emergency Room ("Emergency Room") on March 17, 2007 complaining of abdominal pain. The triage nurse completed a written report for Plaintiff. A chart was opened for Plaintiff; the face sheet included in capital letters "DISABLED" on all five pages under the word "Employer."

---

[2] **Clovis Medical and Nurse Greene did not file a motion for summary judgment and/or summary adjudication.**

Once Plaintiff was registered and brought into the Emergency Room, he came under the care of Nurse Greene and Dr. Mansfield. When Nurse Greene saw Plaintiff around 7:40 p.m. that evening, she requested Plaintiff put on a hospital gown. Plaintiff refused. Plaintiff was asked repeatedly to undress and wear a hospital gown, but refused repeatedly. The hospital security guard, Charles Mitchell, states that the only reason Plaintiff gave for refusing to wear a gown was that it was a "f-ing dress." Doc. 144, 17:1-12

Dr. Mansfield is an independent contractor with privileges to practice in Community Medical's Emergency Room. Dr. Mansfield's shift on March 17, 2007 began at 10:00 p.m., and Dr. Mansfield first saw Plaintiff shortly after his shift began that night. Dr. Mansfield ordered medications for the treatment of Plaintiff at 10:15 p.m. Dr. Mansfield also provided for an alternative form of treatment (prescription for oral medication) if Plaintiff did not stay in the Emergency Room.[3]

The police were called at 10:24 p.m. after Mr. Mitchell was unsuccessful with Plaintiff. Officer Tina Stirling arrived at Community Medical around 10:30 p.m. Corporal Lonnie R. Amerjan arrived around 10:43 p.m.

Plaintiff complained about Dr. Mansfield and Nurse Greene, and refused to wear a hospital gown. Officer Stirling asked

---

[3] Plaintiff contends that Dr. Mansfield conditioned the two alternative forms of treatment on whether he would wear a hospital gown.

4

Plaintiff why he would not wear the hospital gown and explained that the doctor would treat him if he would wear the hospital gown. Plaintiff stated that he did not want to wear the gown and that the doctor could see him as he was. Plaintiff demanded a different doctor and nurse. Corporal Amerjan explained to Plaintiff that if he did not want to be treated at Community Medical, he could have a friend, family or taxi take him to another hospital and that the police could help Plaintiff make arrangements if he wanted to go to another hospital if his resources were lacking.

Plaintiff exclaimed that he was well aware of his rights as a patient and would sue the hospital, doctor, and nurse for violating those rights. Corporal Amerjan informed Plaintiff that suing the hospital and staff was a civil issue. Corporal Amerjan told Plaintiff that he had heard Plaintiff's Jacoby & Myers routine before and the police were not present to participate in a civil law suit. Corporal Amerjan explained that Officer Stirling and he were present to keep the peace and protect the staff and other patients in the hospital.

Plaintiff admitted that he is uncivil when he is in pain. Plaintiff admits that his pain level was at least 12 on a scale of 1 to 10 at the time of the incident. Plaintiff admits that he was in too much pain to leave the hospital bed and did not attempt to walk around to help with the pain.

Plaintiff demanded pain medication. Corporal Amerjan went to find Dr. Mansfield and told him Plaintiff wanted pain medication. Dr. Mansfield told Corporal Amerjan that he could not issue pain medication without examining the patient first. Dr. Mansfield requested the officers try to keep Plaintiff calm and help get him to put on his hospital gown so Dr. Mansfield could treat him.

Plaintiff stated that he knew his rights and demanded a medical advocate. Corporal Amerjan instructed Officer Stirling to get an administrator or medical advocate for Plaintiff. Plaintiff pointed his finger at Corporal Amerjan and exclaimed: "Either get me some pain medication, arrest me, or get the hell out of here!"

Officer Stirling returned to the room with House Supervisor, Kathryn Kawaguchi. Ms. Kawaguchi closed the privacy curtain around Plaintiff and spoke with Plaintiff. When Ms. Kawaguchi opened the privacy curtain several minutes later, Plaintiff was wearing a hospital gown. Ms. Kawaguchi said the hospital would admit Plaintiff and that it was safe for the officers to leave.

Corporal Amerjan and Officer Stirling spent 50 minutes or less at Community Medical. Corporal Amerjan never touched Plaintiff or his hospital bed.

Plaintiff initially refused oral medications needed for the CT because of his nausea, and adjustments were made to provide medications to Plaintiff intravenously to accommodate his condition and request. Dr. Mansfield ordered additional

medications and testing before midnight. Plaintiff reported feeling better and his symptoms being somewhat relieved around midnight.

An IV was placed in Plaintiff, and Dr. Mansfield ordered a CT scan of Plaintiff's abdomen. Plaintiff did not drink the oral contrast fluid necessary for a CT scan. Ms. Kawaguchi was called a second time to assist with Plaintiff. Dr. Mansfield prescribed medication to calm Plaintiff to facilitate the CT scan. The CT scan was completed around 5:30 a.m. and Plaintiff was returned to his room. Plaintiff's chart reflects that he was resting quietly at that point.

After reviewing the results of the CT scan, Dr. Mansfield diagnosed Plaintiff with a pseudo cyst on March 18, 2007. Dr. Mansfield contacted the on-call internist, Dr. Gurcharan Sidhu, to admit Plaintiff into Community Medical. At 6:08 a.m., Dr. Mansfield ordered Plaintiff's pseudo cyst drained. Dr. Sidhu performed a CT guided pseudo cyst drainage on Plaintiff on March 18, 2007.

Community Medical has specific written policies for allowing service animals in patient care areas for persons with disabilities (Doc. 134, Ex. H, Bates Nos. FCH 00015-00017), a policy to assist patients with limited English proficiency (*Id.* at Bates No. FCH00047-FCH00054), and a policy for "special needs" patients ("i.e., interpreter, deaf") (*Id.* at Bates No. FCH00098-

FCH000999). Community Medical's patient's rights policy permits psychiatric patients to wear his or her own clothes. *Id.* at Bates No. FCH00089.

Plaintiff has used Community Medical's facilities many times since March 17, 2007.

### 2. Disputed Facts

Dr. Mansfield contends that it is standard practice not to include face sheets in a patient's medical chart, but that they are purely administrative and not used or relied upon by physicians at Community Medical to treat patients. Dr. Mansfield contends that he did not access or see Plaintiff's face sheets at any time during his treatment of Plaintiff March 17-18, 2007.

Dr. Mansfield and Community Medical contend that it is customary practice for emergency nurses and doctors to require patients to submit to a physical examination and put on a hospital gown. Plaintiff asserts that Community Medical does not have a policy requiring patients to wear hospital gowns and points out that Community Medical policy explicitly permits psychiatric patients to wear their own clothes.

Plaintiff contends that he was denied treatment for several hours because of his refusal to wear a hospital gown and because Defendants failed to ask him if they could make a reasonable accommodation for his disability. Plaintiff claims that he refused to wear a gown because of his disability and sensitivity

8

to cold weather. Defendants contend that Plaintiff never stated this reason for his refusal to wear a hospital gown.

Defendants contend that Plaintiff never told them of his disability. Plaintiff argues that he described his disability and aversion to cold to various medical personnel on the evening of March 17, 2007.

Officer Defendants assert that they had probable cause to arrest Plaintiff under Cal. Penal Code § 415[4] based on Plaintiff's yelling, cursing, and refusal to cooperate with hospital staff. It is undisputed that Officer Defendants did not arrest Plaintiff.

### III. LEGAL STANDARD

Summary judgment is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56.

The moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those

---

[4] Cal. Penal Code § 415 provides:
   Any of the following persons shall be punished by imprisonment in the county jail for a period of not more than 90 days, a fine of not more than four hundred dollars ($400), or both such imprisonment and fine:
   (1) Any person who unlawfully fights in a public place or challenges another person in a public place to fight.
   (2) Any person who maliciously and willfully disturbs another person by loud and unreasonable noise.
   (3) Any person who uses offensive words in a public place which are inherently likely to provoke an immediate violent reaction.

1   portions of the pleadings, depositions, answers to

2   interrogatories, and admissions on file, together with the

3   affidavits, if any, which it believes demonstrate the absence of

4   a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477

5   U.S. 317, 323, 106 S.Ct. 2548 (1986) (internal quotation marks

6   omitted). A fact is material if it could affect the outcome of

7   the suit under the governing substantive law. *Anderson v. Liberty*

8   *Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505 (1986).

9

10       If the moving party would bear the burden of proof on an

11  issue at trial, it must "affirmatively demonstrate that no

12  reasonable trier of fact could find other than for the moving

13  party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th

14  Cir. 2007). In contrast, if the non-moving party bears the burden

15  of proof on an issue, the moving party can prevail by "merely

16  pointing out that there is an absence of evidence" to support the

17  non-moving party's case. *Id.*

18

19       When the moving party meets its burden, the "adverse party

20  may not rest upon the mere allegations or denials of the adverse

21  party's pleadings, but the adverse party's response, by

22  affidavits or as otherwise provided in this rule, must set forth

23  specific facts showing that there is a genuine issue for trial."

24  Fed.R.Civ.P. 56(e).

25

26       In ruling on a motion for summary judgment, a court does not

27  make credibility determinations or weigh evidence. *See Anderson*,

28

**10**

477 U.S. at 255. Rather, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* Only admissible evidence may be considered in deciding a motion for summary judgment. Fed.R.Civ.P. 56(e). "Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment." *Soremekun*, 509 F.3d at 984.

**IV. DISCUSSION**

A. <u>Plaintiff's Motion for Partial Summary Judgment</u>

    1. <u>Second Cause of Action: Violations of the Americans with Disabilities Act, 42 U.S.C. § 12182</u>

Plaintiff moves for summary judgment against Community Medical for violations of the ADA.

Title III of the ADA prohibits discrimination in public accommodations, providing that:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a). Discrimination under the ADA includes:

> a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations.

42 U.S.C. § 12182(b)(2)(A)(ii). It is also discriminatory "to

11

subject an individual or class of individuals on the basis of a disability or disabilities . . . to a denial of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity." 42 U.S.C. § 12182(b)(1)(A)(i).

An individual alleging discrimination under the ADA must show:

> (1) he is disabled as that term is defined by the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; (3) the defendant employed a discriminatory policy or practice; and (4) the defendant discriminated against the plaintiff based upon the plaintiff's disability by (a) failing to make a requested reasonable modification that was (b) necessary to accommodate the plaintiff's disability.

*Fortyune v. Amer. Multi-Cinema, Inc.*, 364 F.3d 1075, 1082 (9th Cir. 2004).

### a. Plaintiff's Disability

The ADA defines "disability" as: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). "Physical or mental impairment" means:

> (A) Any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: Neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genitourinary, hemic and lymphatic, skin, and endocrine;

(B) Any mental or psychological disorder such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities.

28 C.F.R. § 35.104. Physical and mental impairments include:

such contagious and noncontagious diseases and conditions as orthopedic, visual, speech and hearing impairments, cerebral palsy, epilepsy, muscular dystrophy, multiple sclerosis, cancer, heart disease, diabetes, mental retardation, emotional illness, specific learning disabilities, HIV disease (whether symptomatic or asymptomatic), tuberculosis, drug addiction, and alcoholism.

*Id.* "Major life activities means functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." *Id.*

The definition of disability is "construed in favor of broad coverage of individuals under [the ADA], to the maximum extent permitted by the terms of [the ADA]." 42 U.S.C. § 12102(4)(A). However, "[t]he ADA defines 'disability' with specificity as a term of art. Hence, a person may be 'disabled' in the ordinary usage sense, or even for purposes of receiving disability benefits from the government, yet still not be 'disabled' under the ADA. The converse may sometimes be true as well." *Sanders v. Arneson Prod., Inc.*, 91 F.3d 1351, 1354 n.2 (9th Cir. 1996); *see also Thornton v. Fed. Express Corp.*, 530 F.3d 451, 455 (6th Cir. 2008)(holding that a disability determination by the SSA, even if substantiated, would not be controlling to prove that an individual is disabled within the meaning of the ADA).

As evidence of his disability, Plaintiff offers a June 8,

13

1994 decision rendered by an Administrative Law Judge in the

Department of Health and Human Services, Social Security

Administration ("SSA"). Doc. 133, Ex. A. The decision concludes

that Plaintiff "has been disabled since October 21, 1992" and

"has the following impairments which are considered to be

'severe' under the Social Security Act and Regulations: cervical

spine strain, lumbosacral spine strain and bilateral shoulder

pain. These impairments prevent the claimant from engaging in

even a significant range of sedentary exertion. This conclusion

is supported by the medical records of the Valley Medical Center

of Fresno." *Id*. at Bates No. 150. The SSA decision states that

"there are no jobs existing in significant numbers which he can

perform." *Id.* at Bates No. 153.

    Plaintiff also declares the following:

> For approximately two decades I have suffered from a
> debilitating condition known as degenerative disc disease.
> Because of the disease, I have severe joint pains and it is
> difficult for me to stand, sit, walk, or remain in any
> position for sustained periods of time. Because of my joint
> pains, it is difficult for me to shower, perform household
> chores, or exert myself in any other way physically. When I
> walk, I usually use an assistive device such as a cane,
> walker or wheelchair. If I walk without a cane, I am very
> unstable and risk falling. Cold temperatures bring about
> "stingers" which feel like electric current running
> throughout my body, causing me to twitch and exacerbate my
> joint pains. Since 1994 to present I have continued to
> receive SSI benefits based upon my disability, and periodic
> review by the Social Security Administration.

Doc. 188 ¶ 2.

    The SSA determination together with Plaintiff's declaration,

**14**

if found to be true, satisfy the ADA definition of disability. Plaintiff has a physical or mental impairment (degenerative disc disease) that substantially limits (for approximately two decades) one or more major life activities (ability to work, standing, sitting, walking or exerting himself in any way physically).

Community Medical has offered evidence that raises doubt about Plaintiff's disability. Plaintiff's ex-fiancé and housemate, Jill Potter, states that Plaintiff drives with the car window down when he is smoking and owns and rides a motorcycle. Doc. 144, 23:6-10, 22-24. Nurse Greene declares that she has seen Plaintiff since March 17, 2007, when he was an inpatient at Community Medical. "He was outside the hospital in the cool evening/night with his IV pole, smoking. He was wearing a hospital gown only on the top portion of his body." Doc. 146 ¶ 7. These assertions contradict Plaintiff's declarations. Viewing the evidence in favor of the non-moving party and drawing all inferences in its favor raises issues regarding the credibility of Plaintiff's declaration as to the nature and extent of his disability. The SSA determination letter from June 8, 1994 is not determinative in deciding whether Plaintiff is disabled under the ADA. *See Sanders v. Arneson Prod., Inc.*, 91 F.3d at 1354 n.2. Whether Plaintiff is disabled within the meaning of the ADA is a material factual issue.

15

b. <u>Public Accommodation</u>

The ADA defines "public accommodation" to include "professional office of a health care provider [and] hospital." 42 U.S.C. § 12181(7)(F). It is undisputed that Community Medical is a private entity that operates a place of public accommodation.

c. <u>Discriminatory Policy or Practice</u>

Plaintiff challenges Community Medical's policy or practice of requiring patients in the Emergency Room to wear hospital gowns. Plaintiff alleges that he was refused full and equal treatment until he put on the hospital gown and that such refusal delayed his treatment for several hours. Plaintiff asserts that wearing a gown is not necessary for treatment, and that Community Medical's Patient's Rights Policy provides that "all psychiatric patients shall have rights which include, but are not limited to the following: A. To wear his/her own clothes." Doc. 134, Ex. H, Bates Nos. at FCH00089. Plaintiff also alleges that Dr. Mansfield set forth in his notes two separate courses of treatment based on whether Plaintiff would wear a hospital gown, and that the two separate courses of treatment are prima facie evidence of disparate treatment.

Plaintiff also challenges Community Medical's general disability policies. Community Medical has specific written policies for allowing service animals in patient care areas for

**16**

persons with disabilities (Doc. 134, Ex. H, Bates Nos. FCH 00015-00017), a policy regarding patients with limited English proficiency (*Id.* at Bates No. FCH00047-FCH00054), and a policy for "special needs" patients ("i.e., interpreter, deaf) (*Id.* at Bates No. FCH00098-FCH000999). Plaintiff contends that Community Medical's policies are deficient under the ADA.

Community Medical offers evidence that raises issues of whether its policies are discriminatory. In his deposition, Dr. Mansfield states: "It's the customary thing to take off your shirt for an IV. Because they have a bottle and a tube attached to it and you can't take off your shirt afterwards easily unless you have that off. So it's customary to take your shirt off . . . It's customary if you need to do a full examination to have a gown on, clothes off and gown on so you can examine the patient properly." Doc. 144, Ex. B. Nurse Greene declares: "In accordance with the procedure at Community Medical Center–Clovis and that at every other Emergency Department in which I have worked, Mr. Tater-Alexander, who was complaining of abdominal pain and needed that area examined, was asked to put on a gown." Doc. 146 ¶ 5. Community Medical explains that an exception is made for psychiatric patients to wear a hospital gown because California regulations specifically provide for the right of a patient in an acute psychiatric hospital to wear their own clothes. 22 Cal. Admin. Code § 71507(a)(1). In her deposition, Nurse Green

17

describes Community Medical's policy for how to deal with people that claim they have a disability: "With any disability we would accommodate whatever we could for that disability." Doc. 144, 5:12-13.

Plaintiff has not affirmatively demonstrated that no reasonable trier of fact would conclude that Community Medical's policy was not discriminatory. This presents a genuine issue of material fact.

d. <u>Failure to make Necessary Reasonable Accommodation</u>

Plaintiff contends that he requested a reasonable modification (i.e., to receive medical treatment without wearing a hospital gown) that was necessary to accommodate his disability.

Community Medical offers sufficient evidence to create a genuine issue whether it discriminated against Plaintiff by "(a) failing to make a requested reasonable modification that was (b) necessary to accommodate the plaintiff's disability." *Fortyune*, 364 F.3d at 1082. In their depositions, Nurse Green and Dr. Mansfield state that Plaintiff did not inform them that he did not want to take his clothes off because of a disability or nervous disorder. Doc. 144, 5:14-21, 11:17-12:10. Nurse Green states:

> He never told me that he couldn't put on a gown, or that he did not want to, because he had a susceptibility to cold which caused him pain, or that he had a disability that precluded a gown. If he had done so, I would have

**18**

accommodated his concern by offering heated blankets. Heated blankets are kept in the Emergency Department for that purpose.

Doc. 146 ¶ 5. In his deposition, Dr. Mansfield states that Plaintiff never told him he was disabled and that he had adverse reactions to the cold; rather, Plaintiff's stated reason for why he didn't want to put on a gown to Mr. Mitchell was because "it was a F-ing dress." Doc. 144, 17:1-12.

There are genuine issues of material fact implicating credibility of these explanations, whether Community Medical violated Plaintiff's rights under the ADA by requiring he wear a gown.  Plaintiff's motion for summary judgment on the First Cause of Action is DENIED.

> 2. <u>Sixth Cause of Action: Violations of Unruh Civil Rights Act, Cal. Civ. Code §§ 51, 52</u>

Plaintiff moves for summary judgment against Community Medical and Dr. Mansfield for violations of the Unruh Civil Rights Act.

The Unruh Civil Rights Act provides:

All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, marital status, or sexual orientation are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

Cal. Civ. Code § 51(b). A violation of the ADA constitutes a violation of the Unruh Civil Rights Act. Cal. Civ. Code § 51(f).

This claim is derivative of the ADA claims.  Plaintiff

relies on the same facts supporting alleged violation of the ADA for its Unruh Civil Rights Act claim. Because there are genuine issues of material fact that Plaintiff's ADA rights were violated, Plaintiff's motion on summary judgment on the sixth cause of action is DENIED.

     3. <u>Seventh Cause of Action: Violations of Disabled Persons Act, Cal. Civ. Code §§ 54.1, 54.3</u>

Plaintiff moves for summary judgment against Community Medical and Dr. Mansfield for violations of the DPA.

The DPA guarantees that "[i]ndividuals with disabilities shall be entitled to full and equal access, as other members of the general public, to accommodations, advantages, facilities, medical facilities, including hospitals, clinics, and physicians' offices." Cal. Civ. Code § 54.1(a)(1). "Full and equal access" means access that meets the standards of the ADA. Cal. Civ. Code § 54.1(a)(3). The focus of the DPA is "*physical* access" to public spaces. *Turner v. Ass'n of Amer. Med. Coll.*, 167 Cal.App.4[th] 1401, 1412 (2009)(emphasis in original). A violation of the ADA also constitutes a violation of the DPA. Cal. Civ. Code § 54.1(d).

Plaintiff contends that Community Medical and Dr. Mansfield interfered with his enjoyment of Community Medical's facilities because: (1) Dr. Mansfield ordered two separate treatments, depending on whether Plaintiff wore a hospital gown, and (2) Nurse Greene denied Plaintiff treatment until he wore a hospital gown.

20

The focus of the DPA is physical access. There are genuine issues of material fact whether Plaintiff was denied physical access to Community Medical. As stated above, there are genuine issues of material fact whether Plaintiff's ADA rights were violated, and summary judgment under the DPA cannot be granted by virtue of the ADA.

Plaintiff's motion for summary judgment on the seventh cause of action is DENIED.

### 4. Fifteenth Cause of Action: Injunctive Relief

Plaintiff moves for summary judgment on his fifteenth cause of action for injunctive relief against Community Medical. Plaintiff moves for injunctive relief solely on the basis of violation of the ADA. Plaintiff is not entitled to judgment as a matter of law on his ADA claim against Community Medical.

Plaintiff's motion for summary judgment for injunctive relief against Community Medical is DENIED.

### B. Dr. Mansfield's Motion for Summary Judgment or, in the Alternative, Summary Adjudication

#### 1. Sixth Cause of Action: Violations of Unruh Civil Rights Act, Cal. Civ. Code §§ 51, 52

Dr. Mansfield moves for summary judgment on Plaintiff's Sixth Cause of Action for Violations of the Unruh Act.

The Unruh Act provides:

All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, marital status, or sexual orientation are entitled to the full and equal accommodations, advantages,

> facilities, privileges, or services in all business establishments of every kind whatsoever.

Cal. Civ. Code § 51(b). To make a successful claim under the Unruh Act, a plaintiff can either show a violation of the Unruh Act or a violation of the ADA. An ADA violation is a *per se* violation of the Unruh Act. Cal. Civ. Code § 51(f). When an Unruh Act violation is premised on an ADA violation, no showing of intent is required. *Lentini v. Cal. Ctr. for the Arts, Escondido,* 370 F.3d 837, 847 (9th Cir. 2004).

It is undisputed that Dr. Mansfield is an independent contractor who had medical privileges to provide emergency medical services at Community Medical.  Doc. 124 ¶ 1. An earlier Order in this case held that Dr. Mansfield is not a proper defendant under the ADA. *Tater-Alexander v. Amerjan*, 2008 WL 961233, *8 (E.D. Cal. 2008). Plaintiff can therefore only assert an Unruh Act claim against Dr. Mansfield.

Dr. Mansfield cites *Turner v. Association of American Medical Colleges*, 167 Cal.App.4th 1401, 1408 (2008), for its holding that:

> The Unruh Act does not extend to practices and policies that apply equally to all persons: "This section shall not be construed to confer any right or privilege on a person that is conditioned or limited by law or that is applicable alike to persons of every sex, color, race, religion, ancestry, national origin, disability, medical condition, marital status, or sexual orientation." A policy that is neutral on its face is not actionable under the Unruh Act, even when it has a disproportionate impact on a protected class.

*Id.* (citations omitted). Dr. Mansfield also cites *Wynn v.*

22

*Monterey Club*, 111 Cal.App.3d 789, 796-797 (1980), for its holding that a business may adopt reasonable restrictions on its customers when those restrictions are rationally related to the business being conducted or the facilities and services being provided.

Here, it is undisputed that Community Medical has a policy which permits psychiatric patients the right to wear their own clothes. Doc. 134, Ex. H, Bates Nos. at FCH00089. Community Medical's purported policy of requiring all Emergency Room patients to wear hospital gowns is not applicable alike to persons of every medical condition. The policy is therefore not immune from the Unruh Act as a matter of law. Whether requiring all patients other than psychiatric patients is reasonable and rationally related to the provision of medical services is a question of material fact.

Dr. Mansfield contends that he was not aware of Plaintiff's disability and therefore did not have the requisite intent to discriminate against Plaintiff. Plaintiff contends that he described the parameters of his disability to various medical personnel at Community Medical the evening of March 17, 2007. It is undisputed that the five face sheets on Plaintiff's medical chart state "DISABLED." It is a material question of fact whether Dr. Mansfield had knowledge of Plaintiff's disability and the requisite intent to discriminate against him.

Dr. Mansfield also asserts that the record shows that Plaintiff was not denied medical treatment due to his undisclosed disability. However, there are factual disputes regarding whether treatment was conditioned on Plaintiff wearing a hospital gown and the reasonableness of this requirement.  Hospital records reveal that Plaintiff was documented as "disabled."

There are genuine issues of material fact of Plaintiff's Unruh Act claim against Dr. Mansfied. Dr. Mansfield's motion for summary judgment on the Sixth Cause of Action is DENIED.

      2. <u>Seventh Cause of Action: Violations of Disabled Persons Act, Cal. Civ. Code §§ 54.1, 54.3</u>

The DPA guarantees that "[i]ndividuals with disabilities shall be entitled to full and equal access, as other members of the general public, to accommodations, advantages, facilities, medical facilities, including hospitals, clinics, and physicians' offices." Cal. Civ. Code § 54.1(a)(1). "Full and equal access" means access that meets the standards of the ADA. Cal. Civ. Code § 54.1(a)(3). A violation of the ADA also constitutes a violation of the DPA. Cal. Civ. Code § 54.1(d).

In *Turner v. Association of American Medical Colleges*, 167 Cal.App.4[th] at 1413, the California Court of Appeal rejected DPA claims from individuals with learning and reading-related disabilities asking for reasonable accommodations to take the MCAT. The *Turner* court stressed that the focus of the DPA is "physical access" to public spaces. *Id.* at 1412 (emphasis in

original). "The DPA is intended to secure to disabled persons the same right as the general public to the full and free use of facilities open to the public. *Id.* (quotations omitted)(quoting *Urhausen v. Longs Drug Stores Cal., Inc.*, 155 Cal.App.4[th] 254, 261 (2007).

There is a genuine issue of material fact whether Dr. Mansfield denied Plaintiff full and equal access to Clovis Medical.

Dr. Mansfield's motion for summary judgment on the seventh cause of action is DENIED.

> 3. Thirteenth Cause of Action: Civil Conspiracy to Violate Civil Rights and Commit Torts

Dr. Mansfield moves for summary judgment on Plaintiff's thirteenth cause of action for civil conspiracy.

"Conspiracy is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration." *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal.4[th] 503, 510-511 (1994). By participating in a civil conspiracy, a coconspirator adopts as his or her own the torts of coconspirators. *Id.* "The elements of an action for civil conspiracy are the formation and operation of the conspiracy and damage resulting to the plaintiff from an act or acts done in furtherance of the common design." *Id.* at 510.

Plaintiff has not offered any evidence supporting the allegation of conspiracy against Dr. Mansfield.  Plaintiff's claim is based on speculation.  Plaintif's opposition to this motion provides: "Although Mr. Tater-Alexander was unable to hear the parties enter into an agreement, a jury could reasonably find, based upon the evidence, that Defendants discussed issues about Mr. Tater-Alexander outside of his room at the hospital, and thereafter each took the same position with regard to Mr. Tater-Alexander — "put on the gown and you will be provided medical treatment."  Doc. 159, 11:25-12:1.  Considering the evidence in the light most favorable to Plaintiff, Plaintiff's speculation does not raise a genuine issue of material fact.

Dr. Mansfield's motion for summary judgment on the thirteenth cause of action is GRANTED.

### 4. Fourteenth Cause of Action: Aiding and Abetting Violations of Civil Rights and Commission of Torts

Dr. Mansfield moves for summary judgment on Plaintiff's fourteenth cause of action for aiding and abetting violations of civil rights and commission of torts.

Aiding and abetting requires: "(1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance; and (3) the defendant must knowingly and substantially assist the principal violation." *Howard v. Superior*

26

*Court*, 2 Cal.App.4ᵗʰ 745, 748-49 (quoting *Halberstam v. Welch*, 705

F.2d 472, 477 (D.C. Cir. 1983). Aiding and abetting does not

require a defendant to agree to join the wrongful conduct, but it

"necessarily requires a defendant to reach a conscious decision

to participate in tortious activity for the purpose of assisting

another in performing a wrongful act." *Howard*, 2 Cal.App.4ᵗʰ at

749.

    Plaintiff does not provide an opposition to this motion,

and there is an absence of evidence to support this claim against

Dr. Mansfield.

    Dr. Mansfield's motion for summary judgment on the

fourteenth cause of action is GRANTED.

        5. <u>Fifteenth Cause of Action: Injunctive Relief</u>

    Dr. Mansfield moves for summary judgment on Plaintiff's

Fifteenth Cause of Action for Injunctive Relief.

    "A permanent injunction is a determination on the merits

that a plaintiff has prevailed on a cause of action for tort or

other wrongful act against a defendant and that equitable relief

is appropriate. A permanent injunction is not issued to maintain

the status quo but is a final judgment on the merits." *Benasra v.

Mitchell Silberberg & Knupp*, 96 Cal.App.4ᵗʰ 96, 110 (2002). It

does not present a jury issue.  The sixth cause of action for

violation of the Unruh Act against Dr. Mansfield has not been

resolved. It is premature to summarily adjudicate this cause of

action.

Dr. Mansfield's motion for summary judgment on the fifteenth cause of action is DENIED WITHOUT PREJUDICE.

## C. Clovis Defendants' Motion for Summary Judgment

### 1. Claims Against the City of Clovis

Clovis Defendants move for summary judgment as to all causes of action against the City of Clovis. Plaintiff does not oppose this motion.

Clovis Defendants' motion for summary judgment as to all causes of action against the City of Clovis is GRANTED.

### 2. Claims Against Officer Defendants

#### i. Third Cause of Action: First Amendment Violations

Corporal Amerjan and Officer Stirling (together, "Officer Defendants") move for summary judgment on Plaintiff's third cause of action for violations of the First Amendment.

##### a. First Amendment Violations

The First Amendment to the Constitution provides that "Congress shall make no law . . . abridging the freedom of speech." U.S. Const. amend. I. Officer Defendants and Plaintiff agree that Plaintiff has limited free speech rights in a hospital emergency room.

The First Amendment also protects the right to "petition the Government for a redress of grievances." *Id.* The right to petition extends beyond the right to access courts and includes other administrative arms and units of government. *Bradley v.*

28

*Hall*, 64 F.3d 1276, 1279 (9th Cir. 1995). Police officers, however, do not have an "affirmative obligation to investigate a crime in a particular way or to protect one citizen from another even when one citizen deprives the other of liberty of property." *Gina v. Las Vegas Metro. Police Dep't.*, 40 F.3d 1041, 1045 (9th Cir. 1994); *DeShaney v. Winnebago County Dep't. of Soc. Serv.*, 489 U.S. 189, 195, 109 S.Ct. 998 (1989)("The Due Process Clause generally confers no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual.")

Plaintiff alleges that Officer Defendants violated his First Amendment right to petition. Plaintiff contends that he requested Corporal Amerjan take a complaint against Dr. Mansfield, Nurse Greene, and Community Medical based on disability discrimination. Plaintiff alleges that Corporal Amerjan rejected his request and stated that he would not take it unless Plaintiff wore a hospital gown. Plaintiff also argues that Corporal Amerjan's statement, "We know who you are Mr. Jacoby and Meyers, you sue everybody," was designed to stop Plaintiff from continuing to exercise his right to request equal treatment.

It is undisputed that in response to Plaintiff's complaints, Officer Defendants (1) sought Dr. Mansfield and told him that Plaintiff requested pain medication and (2) obtained a medical

advocate for Plaintiff. Nonetheless, Officer Defendants did not have an affirmative duty to intervene or assist Plaintiff in his civil dispute with Dr. Mansfield. *See Gina v. Las Vegas Metro. Police Dep't.*, 40 F.3d at 1045; *DeShaney v. Winnebago County Dep't. of Soc. Serv.*, 489 U.S. at 195. Corporal Amerjan's statement, "We know who you are Mr. Jacoby and Meyers, you sue everybody," does not raise genuine issue of material fact that Plaintiff's First Amendment rights were violated.

### b. Qualified Immunity

Qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 818, 172 L.Ed.2d 565 (2009)(quoting *Groh v. Ramirez*, 540 U.S. 551, 567, 124 S.Ct. 1284 (2004)(KENNEDY, J., dissenting)). The doctrine of qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law ...." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092 (1986). Because qualified immunity is "an immunity from suit rather than a mere defense to liability ... it is effectively

30

lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806 (1985) (emphasis deleted).

In analyzing a claim of qualified immunity, there are two inquiries: First, "taken in the light most favorable to the party asserting the injury, do the facts alleged show the officers' conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If the conduct did not violate a constitutional right, the inquiry is over and the officer is entitled to qualified immunity. *Id.* However, if the conduct did violate a constitutional right, the next question is whether the constitutional right was "clearly established." *Id.* "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202. This inquiry is wholly objective and is undertaken in light of the specific factual circumstances of the case. *Id.* at 201. Principles of qualified immunity shield an officer from personal liability when an officer reasonably believes that his or her conduct complies with the law. *Pearson v. Callahan*, 129 S.Ct. at 823. While the two-step *Saucier* sequence is "often appropriate, it should no longer be regarded as mandatory." *Id.* at 818.

Officer Defendants contend that they did not violate

Plaintiff's First Amendment rights. Even if Plaintiff's First Amendment rights were violated, Officer Defendants argue that they believed that they were acting within the law and their authority and in fact were acting within the law. Plaintiff argues that Officer Defendants are not entitled to qualified immunity because the defense is not available where the conduct violates constitutional rights and those rights were clearly established at the time of the alleged violation. Plaintiff argues that Officer Defendants violated his clearly established First Amendment rights.

Here, Officer Defendants did not violate Plaintiff's First Amendment rights. Officer Defendants sought to obtain medication and treatment for Plaintiff. They were not expected to know Clovis Medical's rules or procedure or the intricacies of civil law and state law. Even if Plaintiff's First Amendment rights had been violated, it would not have been clear to a reasonable officer that the Officer Defendants' conduct was unlawful. Officer Defendants are entitled to qualified immunity. They did not arrest, did not touch, and endeavored to facilitate Plaintiff's treatment.

Officer Defendants' motion for summary judgment on the third cause of action is GRANTED.

> ii. <u>Fourth Cause of Action: Supervisory Liability based on Misconduct of Officer Stirling under 42 U.S.C. § 1983</u>

Officer Defendants move for summary judgment on Plaintiff's fourth cause of action against Corporal Amerjan for supervisory liability.

### 1. Constitutional Violations

In a section 1983 action, there is no such thing as "supervisory liability," because "[e]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Ashcroft v. Iqbal*, --- U.S. ---, 129 S.Ct. 1937, 1949 (2009). A supervisor may be individually liable under Section 1983 "if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Jeffers v. Gomez*, 267 F.3d 895, 915 (9th Cir. 2001).

The TAC originally alleged violations of the First, Fourth, Eighth, Ninth and Fourteenth Amendments. However, Plaintiff does not contest the absence of allegations or evidence supporting violations of the Fourth, Eighth, Ninth and Fourteenth Amendments. Plaintiff opposes summary judgment solely on the First Amendment violation. Officer Defendants and Plaintiff reassert the same arguments on the third cause of action. For the reasons stated above, there is no issue of material fact that Plaintiff's First Amendment rights were violated. Corporal Amerjan does not have supervisory liability.

33

### 2. Qualified Immunity

For the same reasons discussed in the third cause of action, Officer Defendants have qualified immunity from suit on the fifth cause of action.

Officer Defendant's motion for summary judgment on the fourth cause of Action is GRANTED.

### iii. Fifth Cause of Action: Violation of Civil Rights, 42 U.S.C. § 1983

Officer Defendants move for summary judgment on Plaintiff's fifth cause of action for violation of civil rights.

### a. Civil Rights Violations

Section 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983 (1996). To state a claim under 42 U.S.C. § 1983, a plaintiff must show (1) the violation of a right secured by the Constitution or a federal law, and (2) that the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250 (1988).

The TAC asserts Plaintiff's rights under the First, Fourth, Eighth and Fourteenth Amendments. However, Plaintiff does not

**34**

contest the lack of allegations or evidence to support any Constitutional violation except the First Amendment. For the reasons stated above, there is no issue of material fact that Plaintiff's First Amendment rights were violated.

### 1. Qualified Immunity

For the same reasons discussed in the third cause of action, Officer Defendants have qualified immunity from suit on the fifth cause of action.

Officer Defendant's motion for summary judgment on the fifth cause of action is GRANTED.

### iv. Sixth Cause of Action: Violations of Unruh Civil Rights Act, Cal. Civ. Code §§ 51, 52

Officer Defendants move for summary judgment on Plaintiff's sixth cause of action for violation of the Unruh Act.

### 1. Unruh Act Violations

Section 51(b) of the Unruh Act provides:

> All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, marital status, or sexual orientation are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

Cal. Civ. Code § 51(b). To prevail under the Unruh Act, a plaintiff can either show a violation of the Unruh Act or a violation of the ADA. An ADA violation is a *per se* violation of the Unruh Act. Cal. Civ. Code § 51(f); *Lentini v. Cal. Ctr. for*

*the Arts*, *Escondido*, 370 F.3d 837, 847 (9th Cir. 2004). When an Unruh Act violation is premised on an ADA violation, no showing of intent is required. *Id.* Section 52(a) provides Unruh Act liability for "[w]hoever denies, aids or incites a denial, or makes any discrimination or distinction contrary to" the Unruh Act. Cal. Civ. Code § 52(a).

Plaintiff contends that Officer Defendants interfered with his ability to obtain emergency medical services by repeatedly informing Plaintiff that he would not receive medical treatment unless he complied with the hospital's request to wear a hospital gown, and that this amounts to denial of accommodations of medical services.

Title III of the ADA prohibits discrimination by "any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). As stated above, it is undisputed that Community Medical is a place of public accommodation for purposes of the ADA. However, there has been no allegation that Officer Defendants own, lease, or operate Community Medical, and Plaintiff has no evidence that supports such allegation. Officer Defendants are therefore not proper defendants under the ADA. Plaintiff can only assert an Unruh Act claim against Officer Defendants, which requires a showing of intent. *See Lentini*, 370 F.3d at 847.

The Unruh Act applies to "business establishments." The Unruh Act does not define business establishments, but Plaintiff has not alleged or provided any evidence that Officer Defendants would be "business establishments" subject to the Unruh Act. Officer Defendants could only potentially be liable for aiding and inciting any violation of the Unruh Act under Section 52(a).

It is undisputed that Officer Defendants told Dr. Mansfield that Plaintiff was requesting pain medication. It is also undisputed that Officer Defendants obtained a medical advocate for Plaintiff at his request. It is undisputed that Officer Defendants told Plaintiff that he needed to put on a hospital gown. It is also undisputed that Corporal Amerjan told Plaintiff that if he didn't want to be treated at Community Medical, he could have a friend, family or taxi take him to another hospital and that the police could help Plaintiff make arrangements if he wanted to go to another hospital if his resources were lacking. The latter two undisputed facts show that Officers were attempting to facilitate Plaintiff's medical treatment, not deny his access.  No party has argued whether the law governing Clovis Medical and any requirement applicable to providing medical services to a patient without a hospital gown was clearly established. Whether Community Medical violated the ADA and whether Dr. Mansfield violated the Unruh Act has not been resolved. There are genuine issues of material fact as to Officer

Defendants' violation of Section 52(a).

2. <u>Qualified Immunity: Cal. Gov't Code § 820.6</u>

Officer Defendants assert qualified immunity under Section 820.6 of the California Government Code, which provides:

> If a public employee acts in good faith, without malice, and under the apparent authority of an enactment that is unconstitutional, invalid or inapplicable, he is not liable for an injury caused thereby except to the extent that he would have been liable had the enactment been constitutional, valid and applicable.

Cal. Gov. Code § 820.6. Section 820.4 is also applicable:

> A public employee is not liable for his act or omission, exercising due care, in the execution or enforcement of any law. Nothing in this section exonerates a public employee from liability for false arrest or false imprisonment.

Cal. Gov. Code § 820.4.

It is undisputed that Officer Defendants came to Community Medical in response to a call for services. Officer Defendants assert that they had probable cause to arrest Plaintiff under Cal. Penal Code § 415 based on Plaintiff's yelling, cursing, and refusal to cooperate with hospital staff. It is undisputed that Officer Defendants did not arrest Plaintiff. It is also undisputed that Corporal Amerjan did not touch Plaintiff or his hospital bed. It is undisputed that Officer Defendants obtained a medical advocate for Plaintiff and asked Dr. Mansfield for pain medication for Plaintiff.

Plaintiff has not offered any evidence or argument that calls into question Officer Defendants' exercise of due care on

38

March 17 or their entitlement to qualified immunity. Officer

Defendants have qualified immunity from suit on the sixth

of action.

Officer Defendant's motion for summary judgment on the sixth

cause of action is GRANTED.

v. <u>Seventh Cause of Action: Violations of Disabled
Persons Act, Cal. Civ. Code §§ 54.1, 54.3</u>

1. <u>Violations of DPA</u>

The DPA guarantees that "[i]ndividuals with disabilities

shall be entitled to full and equal access, as other members of

the general public, to accommodations, advantages, facilities,

medical facilities, including hospitals, clinics, and physicians'

offices." Cal. Civ. Code § 54.1(a)(1). The focus of the DPA is

"*physical* access" to public spaces. *Turner v. Ass'n of Amer. Med.

Coll.*, 167 Cal.App.4[th] at 1412. "Full and equal access" means

access that meets the standards of the ADA. Cal. Civ. Code §

54.1(a)(3). A violation of the ADA also constitutes a violation

of the DPA. Cal. Civ. Code § 54.1(d).

Plaintiff has not offered any evidence that Officer

Defendants denied Plaintiff's physical access to Community

Medical. The evidence is they sought to facilitate his access.

Plaintiff's DPA claim against Officer Defendants is based on

Officer Defendants' allegedly repeatedly informing Plaintiff that

he would not receive medical treatment unless he put on a

hospital gown and their purported failure to take steps to

determine if Community Medical would modify its stance. As explained in *Turner*, the DPA is focused on *physical* access to public spaces. *Turner,* 167 Cal.App.4[th] at 1412. There is no genuine issue of material fact whether Officer Defendants violated the DPA.

### 2. Qualified Immunity: Cal. Gov't Code § 820.6

For the same reasons discussed in the sixth cause of action, Officer Defendants have qualified immunity from suit on the seventh cause of action.

Officer Defendant's motion for summary judgment on the seventh cause of action is GRANTED.

### vi. Twelfth Cause of Action: Violations of the Bane Act, Cal. Civ. Code § 52.1

### 1. Bane Act Violations

The Bane Act establishes a private right of action against a person who "interferes by threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state." Cal. Civ. Code § 52.1**(a)**.

> Speech alone is not sufficient to support an action [under Section 52.1(a)], except upon a showing that the speech itself threatens violence against a specific person or group of persons; and the person or group of persons against whom the threat is directed reasonably fears that, because of the speech, violence will be committed against them or their property and that the person threatening violence had the apparent ability to carry out the threat.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Cal. Civ. Code § 52.1(j). "The essence of a Bane Act claim is that the defendant, by the specified improper means (i.e., 'threats, intimidation or coercion'), tried to or did prevent the plaintiff from doing something he or she had the right to do under the law or to force the plaintiff to do something that he or she was not required to do under the law." *Austin B. v. Escondido Union. School Dist.*, 149 Cal.App.4[th] 860, 883 (2007).

It is undisputed that Plaintiff was at Community Medical seeking emergency medical treatment and that he was in severe pain when Officer Defendants arrived. It is also undisputed that Corporal Amerjan said that if Plaintiff did not want to be treated at Community Medical, he could go to another hospital. It is undisputed that Corporal Amerjan offered to help Plaintiff make police arrangements if he wanted to go to another hospital and did not have the resources to do so.

Citing *Cole v. Doe 1 thru 2 Officers of City of Emeryville Police Dep't.*, 387 F.Supp.2d 1084, 1103-1104 (N.D. Cal. 2005), Plaintiff argues that Officer Defendants' threat of ejecting Plaintiff from Community Medical is sufficient to demonstrate coercion. In *Cole*, the district court held that "use of law enforcement authority to effectuate a stop, detention (including use of handcuffs), and search can constitute interference by 'threat[ ], intimidation, or coercion' if the officer lacks probable cause to initiate the stop, maintain the detention, and

1  continue a search." *Id.*

2  Plaintiff has not stated he was in fear or apprehension
3  based on anything the Officer Defendants sought to do. There were
4  no express threats, intimidation or coercion. Officer Defendants
5
6  sought to keep the peace and to facilitate Plaintiff receiving
7  medical care based on Clovis Medical's request and offer
8  Plaintiff a medical alternative.

9  2. <u>Qualified Immunity: Cal. Gov't Code § 820.6</u>

10  For the same reasons discussed in the sixth cause of action,
11  Officer Defendants have qualified immunity from suit on the
12  twelfth cause of action.
13
14  Officer Defendant's motion for summary judgment on the
    twelfth cause of action is GRANTED.
15
16  vii.  <u>Thirteenth Cause of Action: Civil Conspiracy to
        Violate Civil Rights and Commit Torts</u>
17
        1. <u>Conspiracy</u>
18  "The elements of an action for civil conspiracy are the
19  formation and operation of the conspiracy and damage resulting to
20
21  the plaintiff from an act or acts done in furtherance of the
22  common design." *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*,
23  7 Cal.4th 503, 511 (1994)(quoting *Doctors' Co. v. Superior Court*,
24  49 Cal.3d 39, 44 (1989)).

25  Plaintiff has not offered evidence to support a claim of
26  civil conspiracy. Plaintiff contends that a conspiracy can be
27  inferred because there was a change in Officer Defendants'
28
                              **42**

"behavior" from when they first arrived at Community Medical and after they spoke with medical staff. Viewing this evidence and the absence of evidence in the light most favorable to Plaintiff, Plaintiff's civil conspiracy claim is unsupported. There is no evidence Officer Defendants knew anyone at the hospital or that they acted in concert with any hospital defendant.

              2. <u>Qualified Immunity: Cal. Gov't Code § 820.6</u>

For the same reasons discussed in the sixth cause of action, Officer Defendants have qualified immunity from suit on the thirteenth cause of action.

Officer Defendant's motion for summary judgment on the thirteenth cause of action is GRANTED.

      viii. <u>Fourteenth Cause of Action: Aiding and Abetting Violations of Civil Rights and Commission of Torts</u>

Officer Defendants move for summary judgment on Plaintiff's fourteenth cause of action for aiding and abetting violations of civil rights and commission of torts.

43

### 1. Aiding and Abetting

Aiding and abetting requires: "(1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance; and (3) the defendant must knowingly and substantially assist the principal violation." *Howard v. Superior Court*, 2 Cal.App.4th 745, 748-49 (1992)(quoting *Halberstam v. Welch*, 705 F.2d 472, 477 (D.C. Cir. 1983). Aiding and abetting does not require a defendant to agree to join the wrongful conduct, but it "necessarily requires a defendant to reach a conscious decision to participate in tortious activity for the purpose of assisting another in performing a wrongful act." *Howard*, 2 Cal.App.4th at 749.

The main issue here is whether Officer Defendants knew that they were participating in an overall illegal course of conduct in denying Plaintiff access to medical care and tortious activity. Officer Defendants contend that they were simply carrying out their duties as police officers. Plaintiff claims that he informed everyone he spoke to at the Emergency Room that he was disabled, including Officer Defendants. Whether Officer Defendants knew that Plaintiff was disabled and whether they were aware of their role as part of an overall violation of laws protecting the disabled is a question of fact.

1      2. <u>Qualified Immunity: Cal. Gov't Code § 820.6</u>

2          For the same reasons discussed in the sixth cause of action,

3  Officer Defendants have qualified immunity from suit on the

4  fourteenth cause of action.

5          Officer Defendant's motion for summary judgment on the

6  fourteenth cause of action is GRANTED.

7          ix. <u>Fifteenth Cause of Action: Injunctive Relief</u>

8          Plaintiff does not oppose Officer Defendants' motion for

9  summary judgment on the fifteenth cause of action.

10          Officer Defendants' motion for summary judgment on the

11  fifteenth cause of action is GRANTED.

12                    <u>V. CONCLUSION</u>

13  For the reasons stated:

14     1. Plaintiff's motion for partial summary judgment is DENIED.

15     2. Dr. Mansfield's motion for summary judgment, or in the

16        alternative, summary adjudication, is DENIED.

17     3. Clovis Police Officer Defendants' motion for summary

18        judgment, or in the alternative, summary adjudication, is

19        GRANTED.

20  SO ORDERED.

21  DATED:  January 28, 2011.

22                          <u>/s/  Oliver W. Wanger</u>
                             Oliver W. Wanger
23                        United States District Judge

45